**Alex G. McCUNE, d/b/a Shenandoah Business Systems, Plaintiff,**

**v.**

**XEROX CORPORATION, Defendant.**

**Civil Action No. 3:97–CV–23.**

United States District Court,
N.D. West Virginia,
Martinsburg Division.

April 30, 1999.

Williams & Connolly, (Steven R. Kuney, Mark S. Levinstein and Kevin, Downey, of counsel), Washington, D.C., Kramer, Levin, Naftalis, Nessen, Kamin ·& Frankel, LLP, (Robert M. Heller, of counsel), New York City, for plaintiffs.

Covington & Burling, (Gregg H. Levy, of counsel), Washington, D.C., Skadden, Arps, Slate, Meagher & Flom, LLP, (Shepard Goldfein, of counsel), New York City, Foley & Lardner, Co–Counsel for Jacksonville Jaguars, Ltd. f/k/a Touchdown Jacksonville, Ltd., (Steven Werber, Chanley Howell, of counsel), Jacksonville, FL, for NFL and Member Team, defendants.

Bledsoe, Schmidt, Lippes & Moonly, P.A., (Terrence E. Schmidt, of counsel), Jacksonville, FL, Cooperman, Levitt, Winikoff, Lester & Newman, P.C., (Allen G. Reit, of counsel), New York City, for defendant Touchdown Jacksonville, Inc.

### MEMORANDUM OPINION AND ORDER

BROADWATER, District Judge.

On this day, the above styled matter came before the Court for consideration of the motion by defendant Xerox Corporation for judgment as a matter of law or in the alternative for new trial (Document No. 176). After reviewing the memoranda of law and considering oral argument, the Court finds that the defendant's motion should be granted in part and denied in part.

### I. STATEMENT OF FACTS

Prior to 1997, Alex McCune, doing· business as Shenandoah Business Systems, operated as an "Agent Owner" under a 1993 Authorized Sales Agent Agreement with Xerox Corporation. The agreement was effective for a one year interval with renewals every year upon mutual consent of the parties, with silence interpreted as consent to renew.

On September 26, 1996, Linda M. Smith, Vice President, Agent/Association Marketing Xerox Corporation, sent a letter to plaintiff notifying him of Xerox's decision to decline to renew the 1993 agreement. The letter received by plaintiff stated:

The purpose of this letter is to notify you that Xerox will not be renewing your current Xerox Authorized Sales Agent Agreement upon its expiration on . December 31, 1996. In order to continue to represent Xerox as a Sales Agent in 1997, you and Xerox must enter into a new and revised "Xerox Authorized Sales Agent Agreement". Your Xerox CBU Management will be responsible for communicating to you during the 4th Quarter their decision as to whether or not to offer this new Contract to you for 1997.

On December 23, 1996, Sandra Carrington, Agent Channel Manager, Maryland/Virginia CBU, sent plaintiff a letter containing the new 1997 Xerox Authorized Sales Agent Agreement for his review and signature. The letter stated:

. Attached is your 1997 Sales Agent Agreement for your review and signature. Please note signatures are required on page 11 of the actual contract and each individual Owner and Sales Agent is required to sign Exhibit 5 (Sales Agent Owner/Employee Non–Disclosure Agreement). The Xerox Reserved Account List and Sales Agent Performance Quotas will be distributed to each Agency no later than the week of January 6, 1997. In order to ensure budgetary figures are provided to' the agency, these forms must be signed and returned to me no later than Monday, December 30, 1996.

Section 4.1 of the Agreement stated:

*Term.* For Agents who cover substantially the same territory under a prior Xerox Authorized Sales Agent Agreement, this Agreement shall be effective as of the earlier of the date of execution or January 1, 1997; for all other Agents, this Agreement shall be effective upon the date of execution by Xerox and the

Agent. Subject to the termination provisions set forth in this Agreement as well as the provisions of Section 5, the initial term shall run through December 31 of the year in which the Agreement is executed.

Further, the territory covered by the 1997 agreement included the same territory covered by the 1993 agreement previously in effect between the plaintiff and the defendant.

On December 29, 1996, plaintiff signed the 1997 agreement and returned it to Xerox. Plaintiff received notice of a meeting to be held on January 23, 1997, with Xerox officials. Plaintiff attended the scheduled meeting and presented his prepared business plan for the upcoming year. After the meeting, Xerox decided that it wished not to do business with McCune in 1997. McCune was made aware of this decision by way of a letter from Sandra Carrington, dated January 27, 1997.

The purpose of the January 23rd meeting was a much disputed topic at trial. Xerox contended that the meeting was for addressing output shortcomings by various Authorized Sales Agents. The plaintiff viewed the meeting as a kickoff meeting to begin the sales year of 1997. In fact, plaintiff asserted that he was greeted at the door by Frank Edmonds, a Xerox vice president, with a hand shake and a statement to the effect of welcoming him back for a new year. This allegation was denied by Xerox.

Furthermore, plaintiff contended that he was offered a 1997 Authorized Sales Agent Agreement and later terminated for various reasons. The first being related to the U.S. Fish and Wildlife Service account. McCune asserted that he was left on board by Xerox for the first days of 1997 just so this very large account could be finalized. This was somewhat corroborated by the testimony of Thomas Nebel, the person in charge of purchasing copiers for the U.S. Fish and Wildlife Service Center in Shepherdstown, West Virginia. Nebel testified that he had expressed reservations about dealing with Xerox to a national account manager, Diane Guerra. Nebel testified that Guerra assured him that his primary point of contact with Xerox would be through McCune's agency, a short distance away. Further, Neble testified that he grew to depend on Shenandoah and that the U.S. Fish and Wildlife Service made no legally binding commitments in 1996 for most of its future purchases from Xerox.

Xerox disagreed and presented a different version. It argued that the U.S. Fish and Wildlife deal was completed in 1996 and that there was no need to have McCune around in 1997 to finalize the deal.

Plaintiff also submitted that he was induced to enter into the 1997 Authorized Sales Agent Agreement so that Xerox could obtain his local business plan for 1997. The basis for this action being that the agent subsequently responsible for McCune's sales territory, Tom Rihn, could utilize the prospective sales portion of the plan for profit. Xerox contended that it had no reason to need the plan since it was from an agent that had not met his quota for two consecutive quarters. Furthermore, Rihn testified that he had never seen the plan.

Finally, Xerox contended that the principal reason for not renewing McCune's Authorized Sales Agent Agreement was plaintiff's prior poor performance. It argued that McCune had too many other business concerns operating out of Shenandoah Business Systems. This included the sale of cellular phones and pagers. Therefore, McCune did not apply the business' full efforts towards selling Xerox products.

Based upon the Court's pre-trial rulings and rulings during the trial, the jury deliberated on the plaintiff's claims for breach of contract and fraud and/or intentional misrepresentation. The jury returned a verdict in favor of the plaintiff on both claims. The jury awarded $66,268.40 for breach of contract and $331,283.00 for

fraud and misrepresentation. The jury found that the defendant's conduct did not warrant consideration of a punitive damages award.

## II. DISCUSSION OF LAW

Xerox moved the Court for renewal of its motion for judgment as a matter of law, or in the alternative, for a new trial pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. The defendant listed nine grounds as the basis for the motion. Inasmuch as several of the grounds are overlapping, the Court will address the issues raised by the defendant's motion as follows: first, sufficiency of evidence to support the fraud claim; second, mutually exclusive nature of claims and double recovery; third, emotional distress; fourth, breach of contract; fifth, breach of the covenant of good faith and fair dealing; and sixth, procedural errors.

■ A Rule 50(b) motion will be granted if the court determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings. *Konkel v. Bob Evans Farms, Inc.,* 165 F.3d 275, 279 (4th Cir.1999).

## A. SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE FRAUD CLAIM

Defendant argued that it was entitled to judgment as a matter of law on the fraud claim because the evidence was insufficient to prove essential elements of the claim by the clear and convincing standard of proof. The Court finds that plaintiff produced ample evidence to prove the fraud claim by clear and convincing evidence.

■ The Court announced early in the case that Virginia law would govern the plaintiff's fraud claim as the alleged fraud occurred mainly in Virginia. The essential elements of fraud under Virginia law are: 1)false misrepresentation; 2) of a material fact; 3) made intentionally and knowingly; 4) with the intent to mislead; 5) with reliance by the party mislead; and 6) with resulting damage. *Winn v. Aleda Construction Co., Inc.,* 227 Va. 304, 315 S.E.2d 193, 195 (1984). A plaintiff cannot base a fraud claim upon statements which are in the nature of a promise and are related to future actions or conduct. *Blair Construction, Inc. v. Weatherford,* 253 Va. 343, 485 S.E.2d 137 (1997). Mere unfulfilled promises as to what will be done in the future are not considered fraud under the law. *Id.* An exception to this general rule is recognized by Virginia courts if the promisor intends not to perform at the time a promise of future performance is made. *Petra International Banking Corp. v. First American Bank of Virginia,* 758 F.Supp. 1120, 1139 (E.D.Va.1991).

■ Furthermore, fraud must be proven by clear and convincing evidence. *Winn,* 315 S.E.2d at 195. "Virginia courts will reverse verdicts of fraud where such evidence has not been presented." *Petra International Banking Corp.,* 758 F.Supp. at 1141.

■ In December 1996, Xerox sent plaintiff a 1997 contract for his consideration. Plaintiff signed and returned the contract to Xerox. Subsequent to this, McCune performed under the 1997 contract for a period of twenty-seven (27) days. Plaintiff attended a 1997 kick-off sales meeting, sold Xerox products, and received compensation under Xerox's 1997 commissions schedule.

The plaintiff contended at trial that Xerox never intended to honor the 1997 contract. The primary accusation was that Xerox wanted to nail down important sales to the U.S. Fish & Wildlife Service which could not be closed in 1996 because the agency's new facility in Shepherdstown, West Virginia was still under construction.

The person in charge of purchasing the U.S. Fish & Wildlife Service's copiers, Thomas Nebel, testified at trial. Nebel testified that he had expressed reservations about dealing with Xerox to a national account manager, Diane Guerra. Nebel

testified that Guerra assured him that the primary point of contact with Xerox would be through McCune's agency a short distance away. Further, Nebel testified that he grew to depend on Shenandoah and that the U.S. Fish & Wildlife Service made no legally binding commitments in 1996 for most of its future purchases from Xerox. Also, plaintiff presented evidence that Xerox sought access to his 1997 business plan prior to his termination.

Finally, the jury was instructed, as requested by Xerox, on the clear and convincing burden for fraud, and this burden was specifically stated on the jury verdict form. Therefore, the Court finds that, without weighing the evidence or considering credibility of the witnesses, substantial evidence supports the jury's findings of fraud by a clear and convincing standard of proof.

## B. MUTUALLY EXCLUSIVE NATURE OF CLAIMS AND DOUBLE RECOVERY

Xerox argued that it was entitled to judgment as a matter of law since fraud and breach of contract are mutually exclusive and inconsistent theories of recovery. The Court finds that the defendant is not entitled to judgment as a matter of law under this assertion.

■ The Court announced early in the case that Virginia law would govern the plaintiff's fraud claim as the alleged fraud occurred mainly in Virginia. In Virginia, when a party has been induced to enter into a contract with fraudulent means, several remedies are available. *Millboro Lumber Co., Inc. v. Augusta Wood Products Corp.*, 140 Va. 409, 125 S.E. 306, 310 (1924). First, the party may affirm the contract, keeping what he has received under it, and maintain an action to recover the damages which he has sustained by reason of the fraud. *Id.* Second, the party may set up such damages as a defense or by the way of a counterclaim, if sued on the contract by the other party. *Id.* Furthermore, the court in *Millboro*

states, "[a]ffirmance of the contract is not a waiver of the fraud and does not bar the right to recover such damages, but merely bars a subsequent recission." *Id.*

■ In the case before the Court, the plaintiff performed under the 1997 contract from January 1, 1997 to January 27, 1997. On January 27, 1997, Xerox notified plaintiff of their unwillingness to extend a contract for the year of 1997. The jury found that a contract existed for the year of 1997 and that Xerox breached this contract. Also, the jury found that Xerox fraudulently induced the defendant into assenting to and performing under the contract. In accordance with *Millboro*, the plaintiff did not waive the damages available for the fraudulent behavior. Therefore, the Court finds that the two claims can co-exist.

Xerox also argued that it was entitled to judgment as a matter of law on the fraud claim because it was merely a recast of the breach of contract claim. In the case before the Court, the plaintiff stated a claim for fraudulent inducement in addition to a claim for breach of contract. The two are separate causes of action. The jury found in favor of the plaintiff on both claims. Therefore, the Court finds that the plaintiff's fraud claim is not a recast of his breach of contract claim.

Xerox next argued that the breach of contract and fraud in the inducement of contract were duplicative claims and recovery for both amounts to double recovery. The court finds merit in this argument.

■ The 1997 Authorized Sales Agent Agreement provided that New York law would apply to any dispute concerning the contract. Therefore, the Court announced early in the case that New York law would govern the plaintiff's breach of contract claim. In New York, "[w]here a plaintiff seeks recovery for the same damages under different legal theories, only a single recovery is allowed." *Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 511 (2nd Cir.1994).

In *Conway*, the court found that the plaintiff's theories of recovery were based on a single set of facts, and that the economic loss sustained was predicated on those unitary facts. *Id.* The court stated, "[u]nder such circumstances, 'the verdicts should be identical and a single recovery allowed.'" *Conway*, 16 F.3d at 511 (citing *Wickham Contracting Co. v. Board of Educ.*, 715 F.2d 21, 28 (2nd Cir.1983).

▌ In the case before the Court, the jury found for the plaintiff on the breach of contract claim and the fraudulent inducement claim. These two findings were based on a single set of facts. The harm done evolves from the 1997 Authorized Sales Agent Agreement. Xerox fraudulently induced McCune to enter into the agreement and denied being bound by it after he had started performance. The fraudulent inducement to enter into the agreement and the subsequent failure to comply are related. Therefore, these actions by Xerox constitute a single course of conduct which caused the plaintiff a single form of damages.

The jury found that plaintiff was entitled to $226,283.00 in compensatory damages on the fraud claim and $66,268.40 on the contract claim. Since the two amounts were derived from theories of recovery based on a single set of facts and the economic loss sustained was predicated on those unitary facts, the Court finds that the compensatory damages awarded on the fraud claim includes those awarded on the contract claim. Allowing the award of the $66,268.40 in contract damages in addition to the fraud compensatory damages would result in a double recovery to the plaintiff. Therefore, the Court finds that the jury's award should be reduced by $66,268.40.

## C. EMOTIONAL DISTRESS

▌ Xerox argued that there was insufficient evidence produced at trial to support an emotional distress verdict. The Court finds no merit to this argument. As the defendant states in its motion and as plaintiff states in his response, *Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145 (1974), sets forth the standard for assessing damages for emotional distress. In *Womack*, the Court stated:

a cause of action will lie for emotional distress, unaccompanied by physical injury, provided four elements are shown: One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved. Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.

*Id.* at 148.

▌ Plaintiff's relationship with Xerox ended after approximately thirteen years of representation in the eastern panhandle of West Virginia. He testified that he felt betrayed by his employer, was unable to replace this loss of income at a time when he had other important family responsibilities that required his attention, and turned to his church and minister for solace. Further, the plaintiff testified that he was emotionally drained by the need to file and prosecute the present lawsuit.

As the parties agree, the jury was properly instructed on the law in the area of emotional distress. Upon this premise, the jury properly found before it the requisite facts to support a verdict allowing damages for emotional distress. Ample evidence was produced showing that the fraud was intentional, that it was outrageous or intolerable, that a causal connec-

tion existed between the wrongdoing and the emotional distress, and that the emotional distress was severe. Therefore, the evidence produced at trial was sufficient enough to support the jury's findings.

## D. BREACH OF CONTRACT

Xerox argued that it was entitled to judgment as a matter of law on the breach of contract claim. The defendant's argument was based on the requirement that a written agreement signed by both parties is a prerequisite to a contract. The Court finds no merit to this argument.

The 1997 Authorized Sales Agent Agreement provided that New York law would apply to any dispute concerning the contract. Therefore, the Court announced early in the case that New York law would govern the plaintiff's breach of contract claim.

■■ As a general rule, a written contract is not binding absent a signature of the party charged. However, if a party accepts the contract but fails to sign it, the party can be bound to the terms. *Newburger v. American Surety Co.*, 242 N.Y. 134, 151 N.E. 155 (1926). In *Newburger*, the court stated: "[i]t was not necessary that both parties should sign the contract to make it an agreement in writing. If a person has accepted a written agreement and has acted upon it he is bound by it, although he may not have set his hand to the document." *Id.* at 143, 151 N.E. 155. On the other hand, a party cannot be charged under a contract when they have evidenced their "intent" not to be bound by the instrument until it has been signed by both parties. *Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 96 (2nd Cir.1994).

■■ The proposed 1997 contract was sent to McCune. The accompanying letter stated "signatures are required" on the page of the contract with boxes for signatures. Plaintiff signed the instrument and returned it to Xerox. Then, McCune performed under the 1997 contract for a period of twenty-seven (27) days. Also, plaintiff attended a 1997 kickoff sales meeting, sold Xerox products, and received compensation under Xerox's 1997 commissions schedules. On January 27, 1997, Xerox sent plaintiff a letter informing him that his contract would not be renewed for 1997. Based on these facts, substantial evidence supports the jury's findings that a contract did exist between the parties and that Xerox's signature was not required on the document itself.

However, as the Court ruled herein, any award for breach of contract constitutes a double recovery. Therefore, the jury's determination that a contract existed is not pertinent to the final judgment in this case.

## E. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

■■ Xerox argued it was entitled to judgment as a matter of law on the fraud claim because the facts alleged do not amount to fraud but merely go to a breach of the covenant of good faith and fair dealing which was not pled. The Court finds no merit to this argument. The case was submitted to the jury and a verdict was returned. Any argument suggesting that the verdict is not supported by evidence, has been addressed by Xerox through other points in its motion. The statement that the facts at trial support a contention not addressed by the jury, are of no consequence at the post-trial motion phase.

## F. PROCEDURAL ERRORS

Xerox argued that it was entitled to judgment as a matter of law or alternatively a new trial because of procedural and substantive errors committed by the Court. These alleged errors were issues raised during the course of the trial. The Court finds that Xerox has failed to meet its burden in regards to showing errors committed by the Court, and the Court relies on the reasons set forth on the record during the trial.

### III.  CONCLUSION

Based upon the foregoing, the Court finds that the motion by defendant Xerox corporation for judgment as a matter of law or in the alternative for new trial (Document No. 176) should be granted in part and denied in part.  More specifically, the Court finds that the jury returned a verdict which would amount to double recover.  In turn, the verdict shall be reduced by a sum of $66,268.40.  In all other aspects, the motion by defendant is denied.

It is, therefore, **ORDERED:**

1.  That the motion by defendant Xerox corporation for judgment as a matter of law or in the alternative for new trial (Document No. 176) is **GRANTED–IN–PART  and  DE-NIED–IN–PART;**

2.  That the judgment issued in this case shall be reduced by the amount of $66,268.40;

3.  That in all other respects, the judgment in this case will remain in effect as previously issued;

4.  That plaintiff's motion for leave to file a supplemental response to defendant's post-trial motions (Document No. 194)is **DENIED.**