Present:  All the Justices

BLAIR CONSTRUCTION, INC.

OPINION BY JUSTICE LEROY R. HASSELL, SR.

v.   Record No. 961079          April 18, 1997

RANDY WEATHERFORD,
T/A W. S. CONSTRUCTION

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
J. Michael Gamble, Judge


In this appeal, we consider whether the plaintiff presented the necessary clear and convincing evidence to establish a prima facie case of constructive fraud.

Blair Construction, Inc., a general contractor, filed its motion for judgment against Randy Weatherford, t/a W. S. Construction, alleging that Weatherford breached its subcontract with Blair and that Weatherford had also engaged in acts of constructive fraud against Blair.  At the conclusion of Blair's evidence, the trial court granted Weatherford's motion to strike the constructive fraud claim, and the jury returned a verdict in favor of Weatherford on the breach of contract claim.  Since Blair appeals only that portion of the trial court's judgment granting Weatherford's motion to strike the constructive fraud claim, we will recite the evidence and all reasonable inferences deducible therefrom in the light most favorable to Blair.

Abbott Laboratories, Ross Products Division, a national pharmaceutical manufacturer, decided to construct a warehouse in Altavista.  Blair was one of the five general contractors from whom Abbott solicited proposals.  Kenneth V. BeCraft, a Blair vice-president and project manager, solicited bids from subcontractors to perform various aspects of the construction

work, including erection of structural steel elements of the building. BeCraft received a bid of $438,400.00 to perform the structural steel erection subcontract from Pro-Erectors, Inc., a steel erection company.

Weatherford, who had not been solicited by BeCraft, called him on December 29 or 30, 1993, and informed him that Weatherford intended to submit a bid to perform the steel erection work. On January 3, 1994, BeCraft received a one-page facsimile from Weatherford which contained a bid to perform the steel erection work for a base price of $253,000.00.

Considering the amount of the bid to be "low," BeCraft spoke with Weatherford on the telephone "to make sure . . . the price was okay." Weatherford stated "[h]e knew it was [a low] price" and "that this would not be an out of town job for his men and it . . . would allow him to have a job where they could commute back and forth to the job site without having to stay in motels."

After informing Weatherford that it was computing and submitting its bid to Abbott in reliance upon Weatherford's bid, Blair submitted its bid to Abbott Laboratories. Between January 31, 1994 and April 8, 1994, Weatherford had numerous conversations, both in person and on the telephone, with BeCraft, and Weatherford indicated no reluctance to perform the steel erection work. After Abbott awarded Blair the contract to construct the warehouse, Blair mailed its standard confirmation form to Weatherford and requested that he acknowledge that he

would perform the steel erection work for $260,150.00 by signing and returning the form. Weatherford did not return the confirmation form.

Since a significant quantity of steel was scheduled to arrive at the construction site on May 9, 1994, BeCraft scheduled a meeting for April 27, 1994 with Weatherford and Everett Grady, Abbott's site engineer and project representative, to discuss the steel erection work. During this meeting, Weatherford and Grady discussed Abbott's contractors' safety guide. Grady responded in the negative to Weatherford's inquiry whether Abbott would require him to utilize safety precautions in excess of those standards required by the Occupational Safety and Health Administration (OSHA). Weatherford expressed no further concern about this issue at this meeting.

However, two days later, Weatherford sent a facsimile to BeCraft which stated in part, "[b]ased on the stric[t] safety guidelines relating to the above referenced job, we will have [an] increase for quote of [January 3, 1994] by $75,000.00. These are extra costs that were not taken into consideration on the bid day. Thank you!" BeCraft called Weatherford by telephone and informed him that BeCraft was "shocked" by the request for additional money and told Weatherford that BeCraft needed a "better justification" before requesting an additional $75,000.00 from Abbott Laboratories.

This conversation occurred on a Friday afternoon, and

Weatherford agreed to contact BeCraft on the following Monday. Weatherford failed to contact BeCraft, as agreed. When Becraft was finally able to contact Weatherford, the latter told Becraft that he was not going to "do the job." Blair expended approximately $602,719.00 in having its own personnel and those of other contractors perform this work.

We recently stated the following principles which govern our resolution of this appeal:

"[T]he elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation. Evaluation Research Corp. v. Alequin, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994); accord Nationwide Mut. Ins. Co. v. Hargraves, 242 Va. 88, 92, 405 S.E.2d 848, 851 (1991); Kitchen v. Throckmorton, 223 Va. 164, 171, 286 S.E.2d 673, 676 (1982). Additionally, '[a] finding of . . . constructive fraud requires clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation.' Alequin, 247 Va. at 148, 439 S.E.2d at 390." Mortarino v. Consultant Eng. Services, 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996).

Additionally, "fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." Patrick v. Summers, 235 Va. 452, 454, 369 S.E.2d 162, 164 (1988) (quoting Soble v. Herman, 175 Va. 489, 500, 9 S.E.2d 459, 464 (1940)); accord Mortarino, 251 Va. at 293, 467 S.E.2d at 781. We explained the reason for this requirement in Lloyd v. Smith, 150 Va. 132, 145,

-4-

142 S.E. 363, 365 (1928):
> "[A]n action based upon fraud must aver the misrepresentation of present pre-existing facts, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. Were the general rule otherwise, every breach of contract could be made the basis of an action in tort for fraud."

Blair contends that it established a prima facie case of constructive fraud. Blair argues that it presented clear and convincing evidence that Weatherford "made a false representation to Blair -- that being his present intent to construct the Abbott building for $260,150.00." Continuing, Blair says that its evidence indicates: Weatherford initiated contact with Blair; Weatherford submitted an extraordinarily low bid and assured Blair that Weatherford would perform for that price; Weatherford had extensive discussions with BeCraft about the progress of the project and never expressed any hesitancy about performing the work; and when Weatherford "knew it would be virtually impossible for Blair to find anyone else to perform the job, Weatherford demanded $75,000.00 more money." Blair asserts that "[s]urely the finder of fact could infer from all this that [Weatherford] had no intention of performing his original promise to construct this job for $260,150.00 but rather getting the job [and] then bleeding Blair for more funds."

We disagree with Blair's contentions. We are of opinion that Blair ignores the differences between <u>actual</u> fraud and <u>constructive</u> fraud, which are two separate and distinct causes of action, only one of which was pled in this case. Blair's sole

allegation of constructive fraud differs from actual fraud because in an action for constructive fraud, "the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it." Evaluation Research Corp., 247 Va. at 148, 439 S.E.2d at 390. Here, Blair pled a cause of action for constructive fraud and, thus, at trial Blair was required to present clear and convincing evidence to establish that Weatherford's statements or actions constituted a "misrepresentation of material fact . . . made innocently or negligently." Id. The record is devoid of such evidence.

Next, Blair says that "misrepresentation of one's present state of mind to do or not do an act can constitute a material misrepresentation sufficient to support a cause of action for constructive fraud." Blair cites Lloyd v. Smith, 150 Va. 132, 142 S.E. 363 (1928), Sea-Land Service, Inc. v. O'Neal, 224 Va. 343, 297 S.E.2d 647 (1982), and Colonial Ford Truck Sales, Inc. v. Schneider, 228 Va. 671, 325 S.E.2d 91 (1985), in support of this contention.

Blair's reliance upon these cases is misplaced. Once again, Blair fails to recognize the distinctions between actual fraud and constructive fraud. Each of the cases that Blair cites involves actual fraud, not constructive fraud. For example, in Colonial Ford, we stated:
>    "While failure to perform an antecedent promise may constitute breach of contract, the breach does not amount to fraud. But the promisor's intention -- his

-6-

state of mind -- is a matter of fact.  When he makes the promise, intending not to perform, his promise is a misrepresentation of <u>present</u> fact, and if made to induce the promisee to act to his detriment, is actionable as an <u>actual</u> fraud.  <u>Lloyd</u> v. <u>Smith</u>, 150 Va. 132, 145-47, 142 S.E. 363, 365-66 (1928); <u>accord</u> <u>Sea-Land Service, Inc.</u> v. <u>O'Neal</u>, 224 Va. 343, 351, 297 S.E.2d 647, 651-52 (1982)."  228 Va. at 677, 325 S.E.2d at 94 (emphasis added).

The record does not contain clear and convincing evidence that would permit a jury to find that Weatherford committed acts of constructive fraud when he submitted his bid to Blair. Weatherford's bid, along with his subsequent telephone conversation with BeCraft in which Weatherford confirmed his low bid, do not constitute statements of present facts, but rather promises to perform the work in the future for a specific price.

For the foregoing reasons, we will affirm the judgment of the trial court.

<u>Affirmed</u>.