Present:  All the Justices

TERRY HENDERSON

v.  Record No. 970503    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                         January 9, 1998
EARL E. HENDERSON

                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Gerald B. Lee, Judge

      In this appeal, we decide whether the trial court erred in
rescinding a deed of gift conveying real property from a
grandfather to his granddaughter.

      By deed of gift dated June 27, 1994, Earl E. Henderson
(Henderson) conveyed to his granddaughter, Terry Henderson
(Terry), a 1.19-acre parcel of real property in Fairfax County.
The property included a log house built by Henderson.  At the
time of the conveyance, Henderson was 92 years old.

      In June 1995, Henderson filed a bill of complaint against
Terry seeking rescission of the deed of gift on the grounds of
undue influence and constructive fraud.  According to the bill of
complaint, at the time of the conveyance Henderson was in a
weakened state of mind because his wife of 65 years had died
about one year before the conveyance, and he had suffered several
minor strokes.  The bill of complaint further alleged that
Henderson's state of mind made him particularly vulnerable to
Terry's suggestion that he sign the deed, and that Terry
"deceptively" represented to Henderson that "there would not be
any taxes on it."

      In a bench trial, Henderson gave the following testimony.
In the late 1980s, Terry asked him for permission to live in the

log house.  Henderson agreed, and Terry and her daughter moved into the house.  Henderson never discussed with Terry the possibility of giving her the property.  He considered selling the property but was informed that he would have to "pay more [taxes] than I received for the place."  In June 1994, the value of the property was about $400,000.

Henderson stated that on the day he conveyed the property to Terry, he was living in the home of one of his daughters.  Terry arrived at the house with no advance notice.  That day was his first wedding anniversary after his wife's death.  Since his wife's death, Henderson was depressed, lost his appetite, lost weight, and "almost lost the desire to live."

According to Henderson, Terry had a deed with her and said, "This is the deed to the log house.  Will you sign it?"  As a result of his depression, he "took [the deed] and looked at it and things kind of seemed unreal to me, you know.  So I signed it."  He did not feel any pressure to sign the deed, but was in "kind of a mental fog . . . and I just kind of, you might say, go [sic] along with the flow."

Before signing the deed, Henderson asked Terry if there would be any tax consequences from the gift.  Terry said that "there would be a small income tax or insignificant income tax, and that was it."  Henderson later realized he had made a mistake when he learned that there would be "very big tax consequences" as a result of the gift, despite Terry's statement to the contrary.

Henderson stated that, about eight months later, he wrote

Terry a letter requesting that she transfer the property back to him. This request was based on his lawyer's advice that he transfer property only through his will, and on his own desire for financial security and the restoration of harmony within the family.

Terry testified to a very different version of events surrounding the execution of the deed of gift. She stated that prior to the conveyance, her grandfather had told her that he wanted to keep the log house in the family and had discussed giving the property to Terry and her sisters. In April 1994, Henderson told Terry that he wanted her to have the property because her sisters did not want it.

On June 27, 1994, when Terry asked Henderson whether he would consider signing a deed conveying the property to her, he agreed. Terry said, "Pop, I have gone and I've done the title search and I've had a good Virginia attorney put together a deed . . . . I'll give it to you. You can just read it over and see what you think about it."

According to Terry, Henderson then read the deed and asked Terry whether there "were any taxes on this." She pointed to the margin of the deed and said, "No, there's no transfer taxes owed on the property." Henderson then said that he wanted to sign the deed, and they went to his bank where he signed the deed before a notary public.

Three physicians, including Henderson's family physician, testified that on the date of the conveyance, Henderson was incompetent, incapable of making a major financial decision, and

vulnerable to suggestion. At the conclusion of the evidence, the trial court found that Henderson had a "weakness of mind" at the time of the conveyance. However, the trial court dismissed the claim of undue influence on the ground that Henderson did not prove that he and Terry had a confidential or fiduciary relationship.

The trial court ruled that Henderson met his burden of proof on the constructive fraud claim and ordered Terry to convey the property back to Henderson. Terry assigns error to this ruling.

Terry argues that Henderson did not meet his burden of proving the elements of constructive fraud by clear and convincing evidence. First, Terry contends that Henderson failed to prove the false representation asserted in his bill of complaint, namely, that Terry told him he would owe no tax as a result of the conveyance. Instead, Terry notes, Henderson testified that Terry told him there would be a small amount of tax owed after the transfer. Citing Massie v. Firmstone, 134 Va. 450, 114 S.E. 652 (1922), Terry argues that Henderson is bound by his testimony and, thus, failed to prove the false representation alleged in his bill of complaint.

In response, Henderson argues that credible evidence supports the trial court's findings. Henderson also contends that since he suffered from a weakened state of mind and received "inadequate consideration" for the conveyance, he was entitled to rescission of the deed. We disagree with Henderson.

Fraud, whether actual or constructive, is never presumed and must be strictly proved as alleged. See Poe v. Voss, 196 Va.

821, 827, 86 S.E.2d 47, 50-51 (1955); <u>Martin v. Williams</u>, 194 Va. 437, 445-46, 73 S.E.2d 355, 359-60 (1952). The elements of a cause of action for constructive fraud must be proved by clear and convincing evidence. <u>Blair Constr. v. Weatherford</u>, 253 Va. 343, 346, 485 S.E.2d 137, 138 (1997); <u>Evaluation Research Corp. v. Alequin</u>, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994).

A finding of constructive fraud requires proof that a false representation of a material fact was made, innocently or negligently, and that the injured party suffered damage as a result of his reliance on the misrepresentation. <u>Mortarino v. Consultant Eng. Services</u>, 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996); <u>Alequin</u>, 247 Va. at 148, 439 S.E.2d at 390. In addition, the evidence must show that the false representation was made so as to induce a reasonable person to believe it, with the intent that the person would act on this representation. <u>Mortarino</u>, 251 Va. at 295, 467 S.E.2d at 782; <u>Alequin</u>, 247 Va. at 148, 439 S.E.2d at 390.

Here, Henderson sought to prove that Terry falsely represented that there would not be any taxes due as a result of the conveyance. Henderson's own testimony, however, was that Terry told him that "there would be a small income tax or insignificant income tax, and that was it." He also stated that Terry told him "that there was an exclusionary clause that covered a small part of it." Thus, Henderson's testimony fails to support the misrepresentation alleged in his amended bill of complaint.

In <u>Massie v. Firmstone</u>, we stated:

> No litigant can successfully ask a court or jury to believe that he has not told the truth. His statements of fact and the necessary inferences therefrom are binding upon him. He cannot be heard to ask that his case be made stronger than he makes it, where, as here, it depends upon facts within his own knowledge and as to which he has testified.

134 Va. at 462, 114 S.E. at 656.

The Massie doctrine rests on the premise that a litigant should not be permitted to profit at another's expense by asking the trier of fact to make findings that contradict the litigant's own sworn statements about facts within his knowledge. Such statements by a litigant, when unequivocal and against his own interest, have the effect of judicial admissions. See Baines v. Parker, 217 Va. 100, 105, 225 S.E.2d 403, 407 (1976).

The Massie doctrine must be applied in the context of the litigant's entire testimony. See id.; Ford Motor Co. v. Bartholomew, 224 Va. 421, 431, 297 S.E.2d 675, 680 (1982). Therefore, an adverse statement by a litigant that stands in isolation from the rest of his testimony concerning the fact at issue will not trigger the Massie preclusion. Id.; VEPCO v. Mabin, 203 Va. 490, 494, 125 S.E.2d 145, 148 (1962). Generally, the trier of fact must decide whether to accept any clarification or explanation offered by the litigant. Id.

Here, Henderson did not offer any clarification or explanation of his testimony that Terry said there would be a small amount of tax, as opposed to no tax, due as a result of the conveyance. Therefore, his testimony had the effect of a judicial admission and Henderson failed to prove the material misrepresentation alleged in his amended bill of complaint.

We disagree with Henderson's contention that a different result is required because the trial court found that he suffered from a weakness of mind, and because there was "inadequate consideration" in support of the conveyance. Henderson's weakness of mind at the time of the conveyance cannot alter his unequivocal testimony that Terry told him that a small amount of tax, rather than no tax, would be due as a result of the conveyance. Further, there is no issue of adequacy of consideration in this case, since the property was conveyed by deed of gift. Therefore, Henderson's reliance on our holdings in Payne v. Simmons, 232 Va. 379, 350 S.E.2d 637 (1986), and Long v. Harrison, 134 Va. 424, 114 S.E. 656 (1922), is misplaced. Those cases recognized the remedy of rescission for individuals suffering diminished mental capacity who receive grossly inadequate consideration for contracts, not deeds of gift.

For these reasons, we will reverse the trial court's decree and enter final judgment in favor of Terry Henderson.

Reversed and final judgment.