Sharon K. MAYBERRY, Plaintiff,

v.

EMEMESSAY, INC., d/b/a Lake Ridge Suzuki, Defendant.

No. 6:01 CV 0054.

United States District Court, W.D. Virginia, Lynchburg Division.

May 2, 2002.

Cary Powell Moseley, Davidson, Sakolosky, Moseley & Tiller, P.C., Lynchburg, VA, Elmer Woodard, Danville, VA, for plaintiff.

James Frederick Watson, Caskie & Frost, Lynchburg, VA, for defendant.

## MEMORANDUM OPINION

MOON, District Judge.

This matter is the lead case in two consolidated cases, 6:01CV00054 and 6:01CV00070. Before the Court are the parties' cross motions in limine to exclude evidence, and the cross motions for summary judgment. For the reasons articulated below, both parties' motions in limine are DENIED. Defendant's motion for summary judgment is GRANTED in part and the Court reserves judgment as to the remainder of this motion, pending the outcome of the pre-trial conference scheduled for April 3, 2002. Plaintiff's motion for summary judgment is DENIED.

### I.

Plaintiff in this case is Sharon K. Mayberry, ("Ms.Mayberry") a resident of Virginia. Defendant is Ememessay, Inc., ("Lake Ridge Suzuki"), a Virginia corporation. In April of 2001, Plaintiff went to Lake Ridge Suzuki with the aim of purchasing a used 2000 Suzuki Vitara sport utility vehicle. She sat down with a representative of the dealership, and executed a series of documents, including a Buyers Order, a Retail Installment Sales Contract ("credit contract"), an Acknowledgment of Receipt of Credit Disclosure, an Odometer Disclosure Statement, and an Agreement to Furnish Insurance. All of these documents were executed at essentially the same time, as steps that Plaintiff was required to take in order to purchase the automobile. Lake Ridge then handed Ms. Mayberry the keys to the Vitara, and she drove off the lot.

Plaintiff contends that by working through this transaction, she purchased herself a car. Defendant, in contrast, insists that the parties knew and understood that the sale was conditioned on the willingness of Triad Financial, a third-party lender, to agree to finance the vehicle. Thus, the purchase would not be complete without Triad's approval. A few days after the above-described transaction, Triad Financial informed Lake Ridge that it would not provide financing. As a result, Lake Ridge contacted Ms. Mayberry and advised her that she had two options: 1) return the car and void the sale; or 2) execute another credit contract (with virtually identical terms) with Toyota Motor Credit Corporation, which had agreed to operate as the lender for this transaction.

Ms. Mayberry objected, insisting that she should be able to make her monthly payments directly to Lake Ridge Suzuki pursuant to the terms in the original credit contract. Lake Ridge responded by repossessing the 2000 Vitara automobile. These lawsuits then ensued. Plaintiff alleges federal violations of the Truth in Lending Act ("TILA"), the Fair Credit Reporting Act, and the Motor Vehicle Information and Cost Savings Act. She has also filed state claims for fraud, wrongful repossession, conversion, breach of warranty, violations of Va.Code Ann. § 8.9–507, various violations of the Virginia Consumer Protection Act, and malicious prosecution.

### II.

#### A.

The first issue before the Court involves the parties' cross motions in limine. Defendant's motion relates to sev-

eral anticipated oral statements by Plaintiff. First, Defendant expects Plaintiff to testify that "a Lake Ridge employee told her, prior to the execution of the contract documents, that her financing was approved." Defendant argues that any such oral evidence should be excluded, as the contract is clear and unambiguous on whether financing had already been approved. Specifically, Defendant points to language in the buyer's order which reads:

FOR SALES INVOLVING DEALER ARRANGED FINANCING ONLY: This sale is conditioned upon approval of your proposed retail installment sale contract as submitted to or through the dealer. If that proposed retail installment sale contract is not approved under the terms agreed to with the dealer, you may cancel this sale and any down payment and/or trade-in you submitted will be returned to you, provided that any vehicle delivered to you by the dealer pursuant to this agreement is returned to the dealer in the same condition as delivered to you, normal wear and tear excepted, within twenty-four hours of written or oral notice to you of the credit denial.

By the terms of this agreement, it is clear that the parties did contemplate that a third-party lender would have to approve of the credit terms "agreed to with the dealer," and that there might be a "credit denial" by this third party. Thus, there would not be any valid, binding contract unless the condition subsequent—the approval of third-party financing—was met.

Evidence of any pre-approval, however, would not contradict this contractual term and would not alter the terms of the contract. The deal would remain conditional on the approval of financing. The evidence would only show that in the Plaintiff's case the financing had been "pre-approved," and thus the condition in the

contract had been met. On this point, therefore, Defendant's motion is denied.

■ Defendant's motion in limine also seeks to exclude oral evidence that Defendant violated the Truth in Lending Act by failing to disclose to Plaintiff the terms of credit in a form that she could keep and take with her, prior to the consummation of the sale. In support of its motion, Defendant points to the Acknowledgment of Receipt of Credit Disclosure, which contains a statement that Plaintiff has been given "a fully completed but unsigned copy of a retail installment sale contract."

Again, this acknowledgment is a statement of a fact, not an alteration of a contractual term. It is simply a piece of evidence that goes to prove that Plaintiff did in fact receive the appropriate credit disclosures, as required under TILA. Plaintiff, however, is entitled to present other evidence that would tend to prove the opposite. Defendant cites to *Walker & Laberge Co., Inc. v. First Nat'l Bank of Boston*, 206 Va. 683, 146 S.E.2d 239 (1966), for the proposition that "it is not permissible for a party who has signed and delivered a valid written instrument to show that there was an agreement that he was not to be bound at all." While this is an accurate statement of the law, it does not control the issue raised by Defendant's motion. Here, any parol evidence that Plaintiff did not receive the credit disclosures would not be offered to show that there was a separate contractual agreement that she was not to be bound at all by the buyer's order or the credit contract. Plaintiff would offer this evidence not to change any term of the contract, but rather to show that the requirements of TILA had not been met. The parol evidence rule is therefore inapplicable. Defendant's motion on this point must be denied as well.

## B.

In her motion in limine, Plaintiff argues that the buyer's order and credit contract are separate, independent contracts that must be interpreted independently from one another. In addition, Plaintiff posits that the other documents that were executed by the parties on that same day—the "acknowledgment of receipt of credit disclosure," the "odometer disclosure statement," and the "agreement to furnish insurance"—are not a part of any contract and should not be used to interpret the meaning of either the buyer's order or the credit contract. Plaintiff's motion in limine essentially seeks to have any evidence of these additional documents excluded as a violation of the parol evidence rule.

It is well settled law in Virginia that "if the intent of the parties can be determined from the language they employ in their contract, parol evidence respecting their intent is inadmissible." *Golding v. Floyd,* 261 Va. 190, 539 S.E.2d 735, 737 (2001); *Amos v. Coffey,* 228 Va. 88, 320 S.E.2d 335, 337 (1984). Plaintiff contends that the parol evidence rule is applicable in this case, on the theory that the other documents signed and executed at the dealership are merely pieces of extrinsic evidence that Defendant wishes to use to interpret the credit contract and the buyer's order. Additionally, Plaintiff insists that the credit contract and the Buyer's Order must be interpreted wholly independently from one another.

However, "where parties have entered into more than one document relating to a business transaction, 'these documents should be interpreted together, each one assisting in determining the meaning intended to be expressed by the others.'" *American Realty Trust v. Chase Manhattan Bank,* 222 Va. 392, 281 S.E.2d 825, 830–31 (1981) (quoting *J.M.*

*Turner & Co. v. Delaney,* 211 Va. 168, 176 S.E.2d 422, 425 (1970)); *see also Hitachi Credit America Corp. v. Signet Bank,* 166 F.3d 614, 626 (4th Cir.1999). In this case, Plaintiff and Defendant sat down on one day and executed several documents, all relating to the credit sale of a single automobile. All of these documents were signed because they were considered to be a part of the sale process. As such, these documents must be read together, so that "each document will be employed to ascertain the meaning intended to be expressed by the others." *Countryside Orthopaedics, P.C., v. Peyton,* 261 Va. 142, 541 S.E.2d 279, 284 (2001) (quoting *Daugherty v. Diment,* 238 Va. 520, 385 S.E.2d 572, 574 (1989)). Plaintiff's motion in limine is denied.

## III.

The Court now considers the parties' cross motions for summary judgment. Summary judgment is appropriate according to Rule 56(c) if the movant is able to "show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." "The function of the judge at the summary judgment stage is not to determine the truth of a matter or to weigh credibility, but to determine whether there is any genuine issue of fact. . . ." *JKC Holding Co., LLC v. Washington Sports Ventures, Inc.,* 264 F.3d 459, 465 (4th Cir.2001). Thus, if there is a reasonable dispute as to any material fact, then summary judgment is improper. *See Mellen v. Bunting,* 181 F.Supp.2d 619, 621–22 (W.D.Va.2002). In this case, where there are cross-motions for summary judgment, each motion must be considered individually, and in considering a party's motion, the facts must be viewed in a light most favorable to the non-movant. *Sylvia Dev. Corp. v. Calvert County,* 48 F.3d 810, 817–18 (4th Cir.1995).

## A.

■ Defendant first moves for summary judgment on its counterclaim for a breach of contract. As stated above, the contract is clear that the sale was conditioned on the approval of Plaintiff's credit by a third-party lender. It is not clear, however, whether Defendant fraudulently induced Plaintiff to enter into the contract by allegedly misrepresenting to her that her financing had been pre-approved, and that the title had already been transferred to her. As a result, the Court reserves judgment on Defendant's motion on this point, pending the results of the pre-trial conference scheduled for Wednesday, April 3, 2002.

## B.

■ Defendant next moves for summary judgment on Plaintiff's first claim for relief, that Defendant violated the Truth in Lending Act. Essentially, Plaintiff's asserts two violations of the Act. Defendant's motion as it relates to these alleged violations will be considered in turn. First, Plaintiff contends that Defendant violated TILA by failing to accurately disclose the "finance charge," the "amount financed," and the "annual percentage rate," in violation of 15 U.S.C. § 1638(a). Specifically, Plaintiff points to the fact that Defendant included a $12 Department of Motor Vehicles ("DMV") fee in the "amount financed" and not as a "finance charge." Plaintiff concedes that if the $12 had actually been paid to the DMV, then no violation of TILA would have resulted. However, because Lake Ridge never paid this amount, Plaintiff contends that the $12 was a finance charge.

Section 1605(a) defines a "finance charge" and specifically notes that "The finance charge does not include charges of a type payable in a comparable cash transaction." Defendant has offered evidence, which Plaintiff has not rebutted, that this fee is charged by the dealership and forwarded on to the DMV in both cash and credit transactions. Thus, the fee is not a "finance charge." Furthermore, the fact that the fee was not forwarded on to the DMV does not transform it into a finance charge in this case.

Plaintiff cites to several cases outside of the Fourth Circuit which find that a fee that is listed as "payable to government officials," but is in fact retained by the dealership, is an undisclosed finance charge in violation of TILA. *See In re Fryer*, 183 B.R. 654 (Bankr.S.D.Ga.1995) (holding that when creditor disclosed an $18 fee, but retained $13, the $13 was a finance charge); *Abbey v. Columbus Dodge*, 607 F.2d 85 (5th Cir.1979) (holding that when dealership disclosed $37.50 as a filing fee paid to government officials, but in fact kept $20 for itself and gave $17.50 to the private, third-party lender, the $37.50 was an undisclosed finance charge). In each of these cases, it is apparent that the dealership never had any intention of forwarding the retained fees to any government official.

In this case, however, all the evidence suggests that Defendant charged the $12 fee with the intent of forwarding the money on to the Department of Motor Vehicles. Because Triad Financial did not approve the Plaintiff's credit, Defendant believed that a condition of the sale had not been met and that there was no need to file anything with the DMV. Defendant retained the $12 fee not to line its own pockets, but with the intent of later filing the necessary paperwork with the DMV in the event that financing was later approved. In the alternative, Defendant was willing to return the money, along with Plaintiff's down payment, so long as she returned the vehicle to the dealership within 24 hours after receiving

notice of the denial of credit by Triad. In short, Plaintiff has failed to present any evidence that would allow a reasonable fact finder to conclude that the $12 fee in this case is analogous to the unlawful fees in *Fryer* or *Abbey*. As a result, Defendant is entitled to summary judgment.

■ Defendant also seeks summary judgment on Plaintiff's TILA claim that Defendant failed to timely disclose the terms of the credit contract, as required by 15 U.S.C. § 1638(b). Defendant correctly notes that this claim must be dismissed, as a violation § 1638(b) only entitles a party to actual damages, not statutory damages, and in this case, Plaintiff has no actual damages related to any alleged failure to timely disclose.

In the Act, 15. U.S.C. § 1640(a)(2)(A) sets out a formula to calculate statutory damages for violations of TILA. The statute explains, "In connection with the disclosures referred to in section 1638 of this title, a creditor shall have a liability determined [by the statutory formula] *only* for failing to comply with the requirements of" § 1638(a)(2), (3), (4), (5), (6), or (9). *See* 15 U.S.C. § 1640(a) (emphasis added). That is, a violation of § 1638(b) does not entitle a party to statutory damages under § 1640. "The only remedy for failing to make timely disclosures is actual damages." *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F.Supp.2d 535, 549 (E.D.Va.2001).

The only actual damages that could have arisen from a failure to make the timely disclosures would be that Plaintiff was prevented from shopping around for a better bargain on the terms of credit. In this case, Plaintiff has admitted in deposition that she had no desire to shop for better credit terms. Thus, she suffered no actual damages. Her claims under 15 U.S.C. § 1638(b) must therefore be dismissed.

Defendant's motion is granted. All of Plaintiff's Count One is dismissed.

## C.

■ Defendant's motion for summary judgment next turns to Plaintiff's claim that Defendant violated the Federal Odometer Act. The Act requires that the transferor of a motor vehicle provide the transferee with a written disclosure either "of the cumulative mileage registered by the odometer," or "that the mileage is unknown if the transferor knows that the mileage registered by the odometer is incorrect." 49 U.S.C. § 32705(a)(1). Furthermore, the regulations construing the Act require, "In connection with the transfer of ownership of a motor vehicle, each transferor shall disclose the mileage to the transferee in writing on the title." 49 C.F.R. § 580.5. Finally, the Act allows an individual to bring a civil action against a dealership that has violated the Act "with intent to defraud." 49 U.S.C. § 32710.

In this case, Plaintiff acknowledges that she received an accurate and honest statement of the mileage on the vehicle through the dealership's "Odometer Disclosure Statement." She further admits that she has no evidence to suggest that the car's odometer has been tampered with or fraudulently manipulated. Plaintiff contends that the only violation of the Act is the fact that the dealership disclosed the mileage in a separate odometer statement and not on the title document itself, as required by the C.F.R. regulations. This Court encountered a similar situation in *Compton v. Altavista Motors, Inc.*, 121 F.Supp.2d 932 (W.D.Va.2000). In *Compton*, the Court noted:

Altavista might have violated the Odometer Act by disclosing the car's mileage on the odometer disclosure statement rather than on the title at the time of the transaction. Nevertheless, even if

Compton can show that an Odometer Act violation occurred, she cannot avoid summary judgment unless she can provide evidence sufficient to show that Altavista committed the violation with an intent to defraud.

121 F.Supp.2d at 941.

Plaintiff argues that Defendant intentionally kept the title documents hidden from her because it wished to fraudulently induce her to enter into a "spot delivery" sale, also known as a "yo-yo" or "vanishing" sale. In essence, the scheme behind a spot delivery sale is as follows: A car buyer comes to a dealership looking to buy a vehicle on credit. Because the buyer wishes to finance the purchase with dealer-arranged financing, the dealer needs to find a third-party lender who will accept the buyer's credit. To be conservative, a dealership could tell a customer that she must wait a few days to buy the car, pending approval of the third-party creditor. However, to take this step would risk the customer re-considering the purchase and backing out of the sale at the last minute. Thus, to assure itself of a sale, the dealership encourages the customer to drive off the lot in "her" new car immediately, on the assumption that the financing will go through. In cases such as this one, where the third-party lender does not agree to purchase the credit contract from the dealer, the dealership then informs the buyer that the car is not hers after all, that the sale never went through, and that she is required to return the vehicle at once.

Depending on the facts of any given case, a spot delivery sale might support a common law cause of action for fraudulent inducement. However, there is nothing on the face of this scheme, as explained above, that relates at all to the Federal Odometer Act. As this Court explained in *Compton:*

> The only purposes of the Odometer Act that Congress chose to articulate in the statute's "findings and purposes" section are "(1) to prohibit tampering with motor vehicle odometers; and (2) to provide safeguards to protect purchasers in the sale of motor vehicles with altered or reset odometers." 49 U.S.C. § 32701.... [Plaintiff argues that] the on-the-title disclosure requirement [is] another "central purpose" of the Act. Plaintiff's argument fails, however, because the on-the-title disclosure requirement is simply a means of fulfilling the Act's previously articulated purposes ... The requirement that the mileage disclosure be made on the title document is just another "safeguard" to protect purchasers from buying cars with altered or reset odometers.

*Id.* at 942. In short, even if there is a technical violation of the Act, Plaintiff cannot maintain a cause of action without evidence of intent to defraud as it relates to the purposes of the Act. To hold otherwise would expand the meaning of the Federal Odometer Act so that almost any state-law claim for fraud would also be a violation of federal law. Even the idea that there can be a "non-mileage violation" of an act whose central purpose is to ensure the accurate reporting of mileage strains credulity. As stated above, while Plaintiff may have a claim for common-law fraud or other similar state claims, she cannot graft her fraud claim onto a federal statute that was never intended to reach beyond the purposes stated in that statute. Because Plaintiff concedes that she was not defrauded as to the mileage of the car, her claim under the Odometer Act must fail.[1] Defendant's motion for summary

---

1. *But see Yazzie v. Amigo Chevrolet, Inc.,* 189 F.Supp.2d 1245 (D.N.M.2001). In *Yazzie,* the plaintiff specifically requested a used truck that "had not been driven locally on the

judgment as to Plaintiff's Count Two is granted.

### D.

Defendant also moves for summary judgment on Plaintiff's Count Three, that Defendant violated the Fair Credit Reporting Act ("FCRA"). Essentially, Plaintiff argues that Defendant violated the Act when it refused to grant Plaintiff credit through the dealership itself after Triad Financial had refused to purchase the credit contract from Lake Ridge Suzuki. Triad Financial sent a contract return notice to Defendant, which explained that the credit contract was "being returned, to you, unfunded, for the following reason(s): AS THE INCOME CAME IN LESS ($1217.27) LESS THAN STATED $2150.00 THIS IS BELOW MINIMUM REQUIREMENT. WE CAN NO LONGER CONSIDER THIS LOAN FOR FUNDING." Based on this fact, Defendant then informed Plaintiff that her financing had not been approved by Triad. Defendant did inform Plaintiff that the dealership had obtained alternative financing for her, on virtually the exact same terms, and that she should return to the dealership to execute the new credit contract. Plaintiff, however, on the advice of her attorney, refused to sign a new credit contract, and instead insisted that she should be able to make her payments, as outlined in the original credit contract, directly to the dealer.

The first aspect of Plaintiff's FCRA complaint is that Defendant violated 15 U.S.C. § 1681m(a), which spells out the obligations of "users taking adverse actions on the basis of information contained in consumer reports." Plaintiff's second FCRA claim is under § 1681m(b), which covers any "Adverse action based on information obtained from third parties other than consumer reporting agencies."

■ As for the claim under § 1681m(a), the above-quoted letter from Triad Financial makes it clear that any alleged "adverse action" was being taken because of a deficiency in Plaintiff's income, and not based on any information in her credit report. Thus, any claim Plaintiff has under § 1681m(a) must be dismissed. More importantly, however, Plaintiff's § 1681 claims must fail because Defendant did not take any "adverse action" against her.

Plaintiff argues that by refusing to allow her to make payments directly to the dealership, Defendant effectively voided the sale and took an "adverse action." However, Defendant did not seek to void the sale. Defendant's first action was to offer Plaintiff alternate financing through Toyota Motor Credit Corporation ("TMCC"). The terms of the alternate financing were virtually identical, and in some cases better, than what Plaintiff had originally bargained for. Under both contracts, Plaintiff was to make 72 payments of $325 per

rough roads of the Navajo reservation." *Id.* at 1246. The dealership presented plaintiff with a truck that it claimed had been coddled on the smoothly paved streets of Phoenix, Arizona. The plaintiff then purchased the truck, which in reality had been owned locally. The dealership had concealed the title from the plaintiff in order to hide the true origin of the vehicle. Based on these facts, the court found that there was an actionable violation of the Odometer Act. For the reasons articulated above and in *Compton v. Al-tavista Motors,* this Court declines to follow *Yazzie.* The Court also notes that in *Yazzie,* the defendant admitted that it had intentionally concealed these material facts from the plaintiff. *See* 189 F.Supp.2d at 1247. In contrast, Defendant in the present case has not admitted to any such fraud. On the contrary, Defendant points to language in the credit contract to prove that it did not conceal the fact that the sale was conditioned on the approval of financing. Thus, *Yazzie* is inapplicable.

month. The total amount of the finance charge in both cases was $9231.53, and the total amount of the payments was $23,400. Thus, Defendant did not take an "adverse action" against Plaintiff after receiving Triad's contract return notice. Instead, Defendant endeavored to offer Plaintiff the exact same financing deal, even though Triad would no longer be the third-party lender. Thus, because Defendant did not take any "adverse action" within the meaning of the Fair Credit Reporting Act, Plaintiff's claims under § 1681 must be dismissed.

Plaintiff's final FRCA claim is under 15 U.S.C. § 1681b(f), which regulates the authorization and access to a person's credit report. Essentially, Plaintiff argues that Defendant violated this section by "inducing" Toyota Motor Credit Corporation to run an unauthorized hit on Plaintiff's credit report. There is nothing in § 1681(f) or in the case law interpreting that section that suggests or implies that a party can be vicariously liable for someone else's alleged violations of the FRCA. As Defendant correctly observes, "If Toyota Motor Credit acted improperly, then Toyota Motor Credit should have to answer for its own actions." Plaintiff's attempt to hold Defendant liable for TMCC's alleged violation of the FRCA must be dismissed.

### E.

The remainder of Plaintiff's causes of action are a series of state law claims. As a preliminary matter, the Court notes that Plaintiff has voluntarily agreed to withdraw her claims for breach of warranty, state odometer fraud, and §§ 59.1–200(10) and (17) of the Virginia Consumer Protection Act ("VCPA"). Thus, these claims are dismissed. Defendant, however, moves for summary judgment as to the remaining claims: fraud, wrongful repossession, con-

version, malicious prosecution, and various violations of the VCPA.

The Virginia Consumer Protection Act, Va.Code Ann. § 59.1–200 states:

A. The following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful:

\*　　\*　　\*　　\*　　\*　　\*

5. Misrepresenting that goods or services have certain qualities, characteristics, ingredients, uses, or benefits;

6. Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model;

7. Advertising or offering for sale goods which are used, secondhand, repossessed, defective, blemished, deteriorated, or reconditioned, or which are "seconds," irregulars, imperfects, or "not first class," without clearly and unequivocally indicating in the advertisement or offer for sale that the goods are used, secondhand, repossessed, defective, blemished, deteriorated, reconditioned, or are "seconds," irregulars, imperfects or "not first class";

\*　　\*　　\*　　\*　　\*　　\*

14. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction. . . .

There is nothing in Plaintiff's complaint that even hints at a violation of § 59.1–200(5), (6), and (7). There is nothing to suggest that Defendant misrepresented the quality of the Suzuki Vitara, or failed to disclose to Plaintiff that it was a used car. Plaintiff's claims under § 59.1–200(5), (6), and (7) are dismissed.

Plaintiff's claim under § 59.1–200(14) appears to be analogous to her claims for actual and constructive fraud.

Thus, as with the fraud claims, discussed below, this Court reserves judgment on Defendant's motion to dismiss, pending the outcome of the pre-trial conference.

■■■■ To maintain an action for actual fraud, a Plaintiff must show that Defendant made: 1) a false representation; 2) of a material fact; 3) intentionally and knowingly; 4) with intent to mislead; 5) that was relied on by Plaintiff; 6) to her detriment. *See Van Deusen v. Snead,* 247 Va. 324, 441 S.E.2d 207 (1994). To maintain an action for constructive fraud, Plaintiff must prove that "a false representation of a material fact was made, innocently or negligently, and that the injured party suffered damage as a result of his reliance on the misrepresentation. In addition, the evidence must show that the false representation was made so as to induce a reasonable person to believe it, with the intent that the person would act on this representation." *Henderson v. Henderson,* 255 Va. 122, 495 S.E.2d 496, 499 (1998) (citations omitted). The elements of a cause of action for constructive or actual fraud must be proven by clear and convincing evidence. *See Blair Constr., Inc. v. Weatherford,* 253 Va. 343, 485 S.E.2d 137, 138 (1997).

In this case, Plaintiff's fraud claims rest on three alleged misrepresentations: 1) that Defendant intentionally misrepresented to Plaintiff that title of the car was being transferred over to her and that she had purchased the car; 2) that Defendant intentionally misrepresented to Plaintiff that the title interest in the car would be processed for the disclosed fee; and 3) Defendant intentionally misrepresented to Plaintiff that her financing had been pre-approved.

■■■ As to the second alleged misrepresentation, relating to the processing fee, the claims for fraud cannot stand. Under Virginia law, "[A]n action based upon fraud must aver the misrepresentation of present pre-existing facts, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. Were the general rule otherwise, every breach of contract could be made the basis of an action in tort for fraud." *Blair Constr., Inc. v. Weatherford,* 253 Va. 343, 485 S.E.2d 137, 139 (1997) (citations omitted). The statement regarding the processing fee is a promise for future performance, not the misrepresentation of a present fact. Therefore, the claim for fraud based on that statement is dismissed.

As to the other alleged misrepresentations, Plaintiff has not clearly articulated what evidence she will offer to support these statements, or what other evidence there is to support the remaining elements of a *prima facie* case of actual or constructive fraud. As noted above, an action for fraud must be proven by clear and convincing evidence. This Court therefore reserves judgment on Defendant's motion to dismiss, pending the outcome of the pre-trial conference.

■■■ The next two issues on Defendant's motion for summary judgment relate to Plaintiff's claims for wrongful repossession and conversion. As discussed above, the contract was clear and unambiguous that the sale was conditioned on the approval of third-party financing. Thus, while Plaintiff may have thought that her financing had been pre-approved and that she was the "owner" of a 2000 Suzuki Vitara, the actual facts show that financing had not been approved, and that Lake Ridge Suzuki remained the owner of the automobile. This scenario, in fact, is the basis for Plaintiff's claims for fraud—that she was fraudulently led to believe that she owned a car that she never in fact owned. In her motion for summary judg-

ment and in her complaints, Plaintiff repeatedly asserts that Defendant retained ownership of the vehicle throughout the process and mislead Plaintiff into believing that she owned the car herself. While these allegations may support a claim for fraud, they directly undermine any claims for conversion or wrongful repossession. As such, Defendant's motion for summary judgment on these claims is granted.

▉ Finally, Defendant moves for summary judgment on Plaintiff's claim for malicious prosecution stated in Count VI of her initial complaint. In order to be liable on a claim for malicious prosecution, "process must be issued for the purpose of bringing the accused before a court, an indictment must be returned, or the person must be arrested." *Almy v. Grisham, et al.*, 55 Va.Cir. 401, 407 (2001). In this case, Plaintiff alleges that Defendant called her up and falsely told her that there was "an all points bulletin" out on her, and added that a warrant for her arrest had been issued. Regardless of whether Defendant actually made these statements, both parties agree that they were false—Plaintiff was at no time in danger of actually being arrested. Thus, there was not sufficient process issued against Plaintiff in order to support a claim for malicious prosecution. Her claim, so far as it is based on these statements, must fail.

Plaintiff, adds, however, that she received a visit from a Department of Motor Vehicles officer, Investigator Mayberry, who advised her that she should go down to the dealer and sign the new credit contract with the dealership. The undisputed facts surrounding Investigator Mayberry's visit to Plaintiff are as follows. While he was visiting the dealership on an unrelated matter, he learned from Lake Ridge's president, Howard Sodikoff, of Plaintiff Mayberry's situation. The investigator,

mistakenly believing that Plaintiff was his cousin's daughter, volunteered to go to her home to talk with her. When Investigator Mayberry pulled into Plaintiff's driveway, he realized that he was not related to her. Still, as long as he was there, he decided to offer her his unsolicited advice that she return to the dealership to sign the TMCC credit contract. She informed him that she had no intention of signing the contract, to which he responded that she would have to work it out with the dealership. Investigator Mayberry then left. Investigator Mayberry never arrested Plaintiff or threatened to commence any criminal action against her. And in fact, no criminal process was initiated. As a result, Plaintiff's claims for malicious prosecution based on the Investigator Mayberry mixup must fail as well.

### IV.

In conclusion, Defendant's motion in limine is DENIED, and Plaintiff's motion in limine is DENIED. Defendant's motion for summary judgment is GRANTED in part, and the Court reserves judgment on the remainder of the motion, pending the outcome of the pretrial conference. Plaintiff's motion for summary judgment is DENIED. This Court retains jurisdiction over Plaintiff's claims for fraud, Plaintiff's claims under Va.Code Ann. § 59.1–200(14), and Defendant's counterclaim. All other claims are dismissed with prejudice.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.