# CIRCUIT COURT OF THE CITY OF NORFOLK

Station # 2, L.L.C.

     v.

Michael Lynch
Lisa Lynch,
Marathon Development
Group, Inc.,
Frank T. Gadams,
and Hourigan
Construction Corp.

April 30, 2008

Case No. (Civil) CL06-6106

180

By Judge Charles D. Griffith, Jr.

*Background*

The facts of the case, presented most favorably to Plaintiff, are as follows. Defendants Michael and Lisa Lynch ("Lynch") owned a building at 233 through 239 Granby Street in Norfolk, Virginia. Lynch sold the top two floors of the building to 237 Granby, L.L.C, which contracted with Defendant Hourigan Construction Corporation ("Hourigan") to build condominiums. Lynch then entered into a lease with Plaintiff, Station # 2, L.L.C. ("Station # 2"), giving him part ownership of the business as partial payment, to open a restaurant on the first floor at 233 Granby Street. After discussions with Lynch and Frank Gadams ("Gadams" is associated with 237 Granby, L.L.C.), Station # 2 planned at that time to build a stage and provide live entertainment to the restaurant's guests. The lease agreement between Lynch and Station # 2 allowed Lynch to take necessary measures to reduce noise in the restaurant so as to preserve the comfort of the condominium residents and required the tenant to install sound attenuation materials in a space below the floor of the condominiums.

In an effort to lower construction costs, the condominium developers cut plans to allow the installation of sound attenuation in a space below the floor of the condominiums. Without sound attenuation material in place, the City of Norfolk issued Station # 2 several noise citations following complaints of noise from owners of the condominiums above the restaurant and eventually ordered the restaurant to stop playing music. Soon thereafter, Station # 2 closed its doors and stopped paying money toward its lease.

Subsequent to these events, Station # 2 filed a seven count complaint against Lynch, Mr. Gadams, Marathon Development Group, Inc. ("Marathon" is associated with Gadams), and Hourigan Construction alleging negligence and civil trespass, breach of contract, fraud, and tortious interference. This letter will address the counts presented against Defendants Michael and Lisa Lynch.

Plaintiff alleges four causes of action against Lynch. Count II of the First Amended Complaint alleges that Lynch breached the oral and written lease agreement by not allowing Station # 2 to install sound attenuation; Count III alleges fraud on the part of Lynch in that Lynch induced Station # 2 to invest in a restaurant and then forced its closure; Count IV alleges that Mr.

and Mrs. Lynch breached their fiduciary duty as members of Station # 2 by working against the interests of the restaurant; and Count VII alleges tortious interference with Station # 2's business by not allowing the installation of sound attenuation and by allowing Hourigan to perform disruptive activities during the lunch service. Lynch responded with a Motion for Summary Judgment, Demurrer, and a request that the Court recognize that the statute of limitations has run on Station # 2's claims.

Defendants Michael and Lisa Lynch submitted a Special Plea in Bar, Motion for Summary Judgment, and Demurrer.

## Discussion

### I. Statute of Limitations

#### A. Fraud

##### 1. Standard of Review

Virginia Code Annotated, § 8.01-243(A), requires that "every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." The cause of action accrues when the fraud is discovered or should reasonably have been discovered by the exercise of due diligence. See Va. Code Ann. § 8.01-249(1); *Eshbaugh v. Amoco Oil Co.*, 234 Va. 74, 76, 360 S.E.2d 350, 351 (1987).

##### 2. Analysis

Lynch relies on *Eshbaugh*, in which the plaintiff had signed a lease agreement to run a gas station expiring July 31, 1977. Under advisement from the defendant that he would obtain a new lease, the plaintiff signed a lease cancellation agreement on May 12, 1977, which moved the expiration of his lease forward two months. On May 19, 1977, the plaintiff learned that a new lease was not forthcoming. The court found that the plaintiff discovered or should have discovered the fraud, and therefore his cause of action would have accrued, on May 19, 1977, the date he learned he would not get a new lease.

Lynch argues that Station # 2's cause of action accrued on the date it acted in reliance of the alleged false statements by Lynch. This would have been akin to finding May 12, 1977, to be the date of accrual in *Eshbaugh*, which was not the case. In fact, according to the allegations in Station # 2's complaints, it could not have known of the fraudulent nature of Lynch's

alleged representations until an unspecified date prior to July 29, 2005, when Station # 2 discovered that Lynch was not working to allow sound attenuation experts into the second floor condominiums, but had instead filed an injunction action to prevent live music at the restaurant. Station # 2 filed its Complaint on November 17, 2006, so the statute of limitations does not bar Station # 2's action for fraud against Lynch.

## B. *Breach of Fiduciary Duty and Tortious Interference with Business*

### 1. *Standard of Review*

The limitations periods for Counts IV and VII against Lynch, involving his alleged breach of fiduciary duties to Station # 2 and his alleged tortious interference with Station # 2's business, are governed by the "catch-all" provision found in § 8.01-248 of the Virginia Code. This section sets a two-year limitation on all actions not addressed elsewhere. Section 8.01-230, then, sets the date of accrual of a right of action at "the date the injury is sustained in the case of injury to the person or damage to property, when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered. . . ." See also *Schonfeld v. Toll Bros., Inc.*, 51 Va. Cir. 134, 138 (1999) (holding that breach of fiduciary duty date of accrual is governed by 8.01-230, and is not the same as fraud). The reviser's note clarifies that "[s]ection 8.01-230 retains the traditional rule of Virginia case law that a cause of action accrues when the wrongful act *or breach of duty* or contract occurs," treating Lynch's fiduciary duty similarly to a contractual duty under § 8.01-230. Because the right of action accrues at the time of a breach of duty, several breaches can support several causes of action. See *Hampton Rds. Sanitation Dist. v. McDonnell*, 234 Va. 235, 239, 360 S.E.2d 841, 843 (1987).

### 2. *Analysis*

Lynch argues that his alleged breach of fiduciary duties and interference with Station # 2's business occurred at latest on the date he allegedly fraudulently induced Station # 2 to enter into a lease agreement. This is incorrect, however, because the lease agreement was not in itself damaging to Station # 2 and, without any damages, Station # 2 could not have a right to any kind of action against Lynch. The claimed damage resulted from Lynch's alleged refusal to allow Station # 2 to install sound attenuation, preventing Station # 2 from abiding by the terms of the lease agreement and the Norfolk City Code.

As presented in the First Amended Complaint, the latest date on which Lynch could have performed these acts was on an unspecified date prior to July 29, 2005, when he participated in a court hearing to prevent live music at Station # 2. Accordingly, without further evidence as to the date of Mr. Lynch's actions, the statute of limitations does not bar Station # 2's breach of fiduciary duties and interference with business expectancy actions.

## II. *Demurrer*

Lynch Demurred to all four counts in the First Amended Complaint directed at him. The Court will address each count in turn.

### A. *Standard of Review*

"To survive a challenge by demurrer, a pleading must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." *Moore v. Jefferson Hosp., Inc.*, 208 Va 438, 440, 158 S.E.2d 124, 126 (1967) (internal quotation marks and citations omitted). "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Glazebrook v. Board of Supervisors*, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003). "If, on demurrer, the court can say, if the facts stated are proved, the plaintiff is entitled to recover, then the declaration is sufficient." *E. I. DuPont De Nemours & Co. v. Snead's Adm'r*, 124 Va. 177, 184, 97 S.E. 812, 813 (1919). When considering a demurrer, the Court accepts "as true all facts properly pleaded in the bill of complaint and all reasonable and fair inferences that may be drawn from those facts." *Id.*

### B. *Analysis*

#### 1. *Breach of Contract*

Station # 2 alleges that Lynch violated his lease agreement with Station # 2 by not allowing sound attenuation professionals to install insulation between the ceiling of Station # 2 and the floor of the condominiums owned by 237 Granby, L.L.C. Paragraph 10(f) of the parties' lease agreement, attached to the First Amended Complaint, states:

> Tenant agrees that it will comply with all City Codes and Regulations with regard to noise levels and that notwithstanding compliance, upon reasonable request, Tenant will reduce the level of noise so as to not interfere with the quiet enjoyment in

condominiums located above the business. Such request can include that Tenant eliminate specific entertainment if it interferes with the quiet enjoyment of the owners of the condominiums or with adjacent businesses. Tenant will insure that in conjunction with the construction of the condominiums located above the business that additional sound proofing material to be selected by the tenant with professional sound engineering consultants will be installed between the ceiling of the Premises and the floor of the lower level of the condominium located above the business. Tenant will use reasonable efforts to work in conjunction with the builder of the condominiums with regard to sound proofing. The cost of the insulating material is to be paid for by the tenant. The insulation is to be of sufficient sound abatement characteristic as to effectively minimize noise and vibration from the leased premises being transmitted to the condominiums and to meet Landlord's covenant of quiet enjoyment passing to the owner of the condominiums.

Lynch relies on the language of the agreement placing responsibility upon Station # 2 to work with the builder of the condominiums to install sound attenuation. The language of the agreement states, however, only that Station # 2 was required to "use *reasonable efforts* to work in conjunction with the builder of the condominiums with regard to sound proofing." The allegations in the First Amended Complaint clearly set out the reasonable efforts Station # 2 used to work in conjunction with Hourigan and Gadams to install sound attenuation. (See First Am. Compl. ¶¶ 7, 19, 20, 21.)

The lease agreement does not clarify the obligations of the parties in the event that Station # 2's reasonable efforts to work with the construction company should fail. The agreement still clearly requires Station # 2 to install sound attenuation, but fails to describe a means for doing so. The Complaint, therefore, implies an ambiguity in the lease agreement and suggests that Lynch may have failed to fulfill obligations under the lease with regard to sound attenuation that the parties failed to memorialize in their written lease agreement. These facts are sufficient to overcome a challenge by demurrer.

### 2. *Fraud*

Station # 2 alleges that Lynch pulled a "bait and switch" scam on the restaurant by inducing Station # 2 to enter into a lease agreement and then refusing to allow the restaurant to install sound attenuation underneath the floor of the above condominiums and preventing live performances at Station # 2.

Plaintiff draws the Court's attention to *Prospect Development Co. v. Bershader*, 258 Va. 75, 515 S.E.2d 291 (1999), in support of its position. The plaintiffs in that case purchased a parcel of land with assurances from the development company that it would not and could not develop the parcel adjacent to the plaintiffs' property. In fact, the development company could develop the land and had planned to do so all along, even as it told the plaintiffs that it had no such plans. The Supreme Court of Virginia held that proof of the developer's misrepresentations was sufficient to support a finding of actual and constructive fraud.

This case does not, however, support Plaintiff's position. In *Blair Construction, Inc. v. Weatherford*, 253 Va. 343, 346, 485 S.E.2d 137, 139 (1997) (quoting *Patrick v. Summers*, 235 Va. 452, 454, 369 S.E.2d 162, 164 (1988)), the Supreme Court of Virginia states that "fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." The court went on to explain that "[a]n action based upon fraud must aver the misrepresentation of present pre-existing facts, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. Were the general rule otherwise, every breach of contract could be made the basis of an action in tort for fraud." *Id.* at 347, 485 S.E.2d at 139 (quoting *Lloyd v. Smith*, 150 Va. 132, 145, 142 S.E. 363, 365 (1928)).

The common law does not require Lynch to somehow ensure that a restaurant has sound attenuation material in place. Plaintiff alleges only that Gadams and Marathon, above the restaurant, changed their minds with regard to the insertion of sound attenuation due to cost (First Am. Compl. ¶ 21), not that Lynch had lied from the beginning about his plan to allow Station # 2 to install sound attenuation. Therefore, Station # 2 has not alleged facts which, if proven, would amount to a claim of fraud against Lynch.

### 3. Breach of Fiduciary Duty

Plaintiff alleges that Lynch, as a member or partner of Station # 2, L.L.C., breached his fiduciary duties to the company by refusing to allow sound attenuation to be placed between the ceiling of the restaurant and the floor of the condominiums and by attempting to prevent live performances at the restaurant.

While Lynch had no duty or power to cause 237 Granby, L.L.C., or Hourigan to give access to the condominiums to Station # 2 and while the lease did disclose possible conflicts of interest between Lynch and Station # 2, the question remains as to whether Lynch may have held further obligations

after Station # 2 fulfilled its duty to use reasonable efforts to work with Hourigan to install sound attenuation below the condominiums. See, e.g., *Long & Foster Real Estate, Inc. v. Clay*, 231 Va. 170, 174-75, 343 S.E.2d 297, 300 (1986) (fiduciaries have a duty to disclose potential conflicts of interest). A parallel question therefore remains as to whether Lynch may have breached his duty as a member of Station # 2 by not fulfilling his obligations under the lease agreement.

### 4. *Interference with Business*

Plaintiff alleges in Count VII of its First Amended Complaint that Lynch tortiously interfered with Station # 2's business expectancy and that Lynch conspired with others to injure its business. Tortious interference with business expectancy is a common law tort, while conspiracy to injure a business is governed by Virginia Code Annotated, §§ 18.2-499 and 18.2-500.

### i. *Tortious Interference with Business Expectancy*

The Supreme Court of Virginia lists the elements of tortious interference with a business relationship in *Glass v. Glass*, 228 Va. 39, 51, 321 S.E.2d 69, 76-77 (1984): "(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that, absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff."

Addressing each element in turn, the Complaint makes allegations of a business relationship sufficient to meet the first element. Paragraph 32 of the First Amended Complaint states that Station # 2 was scheduled as a venue for weddings and that it had "regular crowds" on weekends.

The Complaint does not allege that Marathon or Gadams knew that Station # 2 had weddings scheduled and had "regular crowds" on weekends. It does allege facts, however, that suggest Gadams and Marathon understood that Station # 2 planned from the beginning to draw guests using live performances. (See First Am Compl. ¶¶ 4 & 5.)

With regard to the third element, Plaintiff alleges that Lynch took part in barring Station # 2 from installing sound attenuation, which then resulted in a directive from the City of Norfolk prohibiting live music at Station # 2. The third element of tortious interference requires "misconduct," relying on the ability of Station # 2 to prove at least one of its other claims against Lynch. Plaintiff may be able to do so, as its breach of contract and breach of fiduciary duty claims have survived Defendant's Demurrer.

With regard to the fourth element, Station # 2 still had an operating restaurant after the City's alleged February 19, 2006, directive, albeit one without live entertainment. The damages, accordingly, would be the difference in business expectancy of a restaurant with live entertainment and one without live entertainment. Station # 2 was in operation for less than ten days after the City's directive, with one weekend during that time.[2] Arguably, it may be possible for Station # 2 to prove damages despite this short operating period. See Va. Code Ann. § 8.01-221.1.

Therefore, with regard to Plaintiff's claim of tortious interference with a business against Lynch, it has pleaded facts sufficient to support a cause of action.

## ii. *Conspiracy to Injure Business*

Section 18.2-499(A) of the Virginia Code makes it illegal for:

> [a]ny two or more persons who combine, associate, agree, mutually undertake, or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act. . . .

Section 18.2-500(A) awards treble civil damages to a person injured by reason of a violation of § 18.2-499(A).

The Supreme Court of Virginia has clarified what elements are necessary for a plaintiff to succeed in a civil action for violation of § 18.2-499(A): "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business and (2) resulting damage to plaintiff." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449, 318 S.E.2d 592, 596 (1984). The statutes do not require a plaintiff to prove that a defendant

---

[2] February 19, 2006, was a Sunday, so Plaintiff may have misstated the date of the directive, but the Court will assume this date is correct. Plaintiff alleges that it informed Lynch in February of 2006 that it would withhold rent unless he would allow sound attenuation in the restaurant to which he responded by changing the locks. (See First Am. Compl. ¶ 34.) So, assuming Station # 2 operated without music until and including the last day of February, it would have operated without live entertainment for nine days.

acted with actual malice; they require only proof that a defendant acted with legal malice, "intentionally, purposely, and without lawful justification." *Simmons v. Miller*, 261 Va. 561, 578, 544 S.E.2d 666, 677 (2001); *Commercial Bus. Sys. v. BellSouth Servs., Inc.*, 249 Va. 39, 47, 453 S.E.2d 261, 267 (1995). However, to be "without lawful justification," the Supreme Court of Virginia clarifies a civil conspiracy must necessarily include "some concerted action, to accomplish same criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985). Additionally, in order to succeed on a claim of civil conspiracy under §§ 18.2-499 and 18.2-500, a plaintiff must prove with clear and convincing evidence each element of the offense. *Simmons v. Miller*, 261 Va. at 578, 544 S.E.2d at 677.

Station # 2 must make allegations, then, that, if proven by clear and convincing evidence, show: (1) Lynch conspired with someone; (2) the conspiracy involved an intent to injure Plaintiff; (3) he used illegal means or intended to serve an unlawful purpose; and (4) he succeeded in damaging Plaintiff.

Station # 2 alleges that (1) Lynch conspired with Gadams and Hourigan (see First Am. Compl. ¶¶ 23, 55, 73); (2) with the intent to bar Station # 2 from providing live entertainment, vital to the restaurant's profits (see First Am Compl. ¶¶ 24, 53, 55); (3) violating an enforceable contract and breaching fiduciary duties in order to achieve its end goal (see First Am. Compl. ¶¶ 41-44, 50-59); (4) and the plan culminated in a directive prohibiting Station # 2 from providing live entertainment, which damaged Station # 2's profits (see First Am. Compl. ¶¶ 31, 32).

Accordingly, the Court will overrule Defendants' Demurrer.

### III. *Motion for Summary Judgment*

Defendant Lynch moves for summary judgment based on paragraph 10(f) of its lease agreement with Station # 2, quoted above. The Court will not rehash the discussion above, but will note that, in a summary judgment proceeding, the court may consider all pleadings, not merely the complaint. See Va. Sup. Ct. R. 3:20 (2007). A review of the construction contract attached to Hourigan Construction Corporation's Demurrer strengthens the Court's analysis above in application to a summary judgment because it shows that the construction plans had been revised, removing the raised floors in a cost saving measure. Because this construction contract went into effect one month before Station # 2 signed its lease with Lynch, it was already

impossible on the date the lease agreement went into effect for Station # 2 to carry out the sound attenuation requirements precisely as stated in paragraph 10(f) of the lease agreement. The lease agreement, therefore, holds a latent ambiguity, which cannot be summarily dismissed at this stage of the parties' proceedings. See, e.g., *Galloway Corp. v. S. B. Ballard Constr. Co.*, 250 Va. 493, 502, 464 S.E.2d 349, 354-55 (1995) (holding that an ambiguity not self evident in a contract, or "latent ambiguity," may be remedied by parol and other extrinsic evidence).

## Conclusion

The court denies Defendants Michael and Lisa Lynch's Special Plea in Bar, sustains Defendants' Demurrer with regard to Count III of the First Amended Complaint, overrules Defendants' Demurrer with regard to Counts II, IV, and VII of the First Amended Complaint, and denies Defendants' Motion for Summary Judgment.

## Opinion

Defendants Marathon Development Group, Inc., and Frank T. Gadams submitted a Demurrer, Special Plea in Bar, and Motion Craving Oyer.

Because of the construction planned for the upper levels of the building, Station # 2 claims to have made agreements with Lynch, Hourigan, and Mr. Gadams, who is associated with 237 Granby, L.L.C., to not allow construction during the restaurant's lunch service. The construction allegedly continued during lunch on several occasions, causing noise and dust which dirtied the establishment and disturbed many customers, causing them to leave without paying. Station # 2 also alleges that the Hourigan's construction workers caused a hole in Station # 2's office which allowed dust and rain to fall upon computer equipment.

As a further setback to Station # 2, in an effort to lower construction costs, the condominium developers cut plans to allow the installation of sound attenuation in a space below the floor of the condominiums. Without sound attenuation material in place, the City of Norfolk issued Station # 2 several noise citations, following complaints of noise from owners of the condominiums above the restaurant and eventually ordered the restaurant to stop playing music. Soon thereafter Station # 2 closed its doors and stopped paying money toward its lease.

Subsequent to these events, Station # 2 filed a seven count complaint against Lynch, Mr. Gadams, Marathon Development Group, Inc. ("Marathon" is associated with Gadams), and Hourigan Construction alleging negligence

and civil trespass, breach of contract, fraud, and tortious interference. This opinion will address the counts presented against Defendants Marathon and Gadams.

Plaintiff alleges three causes of action against Gadams. Count V of the First Amended Complaint alleges Gadams breached an oral contract by Mr. Gadams to allow Station # 2 to install sound attenuation material beneath the floor of the condominium units he owned. Count VI alleges fraud on the part of Gadams. And Count VII alleges that Gadams tortiously interfered with Station # 2's business expectancy and violated § 18.2-499 of the Virginia Code by allowing Hourigan to perform disruptive activities during Station # 2's lunch service and preventing Station # 2 from installing sound attenuation. Marathon and Gadams now demur to the First Amended Complaint, crave oyer of certain documents, and request that the Court recognize that the statute of limitations has run on several of Station # 2's claims.

## Discussion

### I. *Motion Craving Oyer*

Defendants Marathon and Gadams submitted to the Court a Motion Craving Oyer of an alleged contract between Plaintiff and themselves and the deed of sale of 237 Granby from Lynch to 237 Granby, L.L.C.

### A. *Standard of Review*

> A defendant may crave oyer of all documents that form the basis of Plaintiff's claim, as "no intelligent construction of any writing or record can be made unless all of the essential parts of such paper or record are produced." *Culpeper Nat'l Bank v. Morris*, 168 Va. 379, 382, 191 S.E. 764, 765 (1937). "A litigant has no right to put [blinders] on the Court and attempt to restrict its vision to only such parts of the record as the litigant thinks tend to support his view." *Id.* at 382-83, 191 S.E. at 765.

*Bagwell v. City of Norfolk*, 59 Va. Cir. 205, 208 (2002).

A document for which oyer is craved must serve as more than mere evidence; the document must be essential to the complaint. *See id.* In other words, the document must be one that is essential to the plaintiff's complaint.

B. *Analysis*

The Court will deny the Motion with regard to the alleged contract because Plaintiff nowhere alleges such contract in written form. Additionally, the Court may take judicial notice of matters of public record, including the ownership of the floors above Station # 2 by 237 Granby, L.L.C., and therefore has no need to grant oyer of the deed, which was filed with the Norfolk Circuit Court Clerk's Office on August 12, 2004. *See* Va. Code § 8.01-389; *Pratt v. Kelly*, 585 F.2d 692, 696 (4th Cir. 1978) (holding that a court may take judicial notice of a deed).

## II. *Statute of Limitations*

A. *Standard of Review*

Virginia Code Annotated, § 8.01-243(A), requires that "every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." The cause of action accrues when the fraud is discovered or should reasonably have been discovered by the exercise of due diligence. *See* Va. Code Ann. § 8.01-249(1); *Eshbaugh v. Amoco Oil Co.*, 234 Va. 74, 76, 360 S.E.2d 350, 351 (1987).

The limitations period for Count VII against Marathon and Gadams alleging tortious interference with Station # 2's business is governed by the "catch-all" provision found in § 8.01-248 of the Virginia Code. This section sets a two-year limitation on all actions not addressed elsewhere. Section 8.01-230, then, sets the date of accrual of a right of action at "the date the injury is sustained in the case of injury to the person or damage to property, when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered. . . ." Because the right of action accrues at the time of a breach of duty, several breaches can support several causes of action. *See Hampton Rds. Sanitation Dist. v. McDonnell*, 234 Va. 235, 239, 360 S.E.2d 841, 843 (1987).

B. *Analysis*

Gadams argues that Plaintiff's claims of fraud and tortious interference against Marathon and himself, as stated in the First Amended Complaint, are barred by the associated statutes of limitations because they are based on Plaintiff's assertion that Marathon agreed to allow Station # 2 to install sound attenuation sometime before mid-November of 2004. The First Amended

Complaint, however, contains no such assertion. The alleged agreement originally contemplated that the restaurant would open for business in mid-November, but construction delays caused the restaurant to open in February of 2005, according to the Complaint. The Complaint also alleges that Hourigan was engaged in demolition until the Spring of 2005. It is plausible, then, that no breach of contract could have occurred or fraud discovered until it came time for the sound attenuation material to be installed, after demolition was completed and construction began. The statute of limitations, therefore, does not bar Plaintiff's fraud and tortious interference claims against Gadams and Marathon.

## III. *Demurrer*

### A. *Standard of Review*

"To survive a challenge by demurrer, a pleading must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." *Moore v. Jefferson Hosp., Inc.*, 208 Va. 438, 440, 158 S.E.2d 124, 126 (1967) (internal quotation marks and citations omitted). "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Glazebrook v. Board of Supervisors*, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003). "If, on demurrer, the court can say, if the facts stated are proved, the plaintiff is entitled to recover, then the declaration is sufficient." *E. I. DuPont De Nemours & Co. v. Snead's Adm'r*, 124 Va. 177, 184, 97 S.E. 812, 813 (1919). When considering a demurrer, the Court accepts "as true all facts properly pleaded in the bill of complaint and all reasonable and fair inferences that may be drawn from those facts." *Id.*

### B. *Analysis*

#### 1. *Breach of Contract*

Station # 2 alleges in Count V of the First Amended Complaint that Marathon and Gadams breached their agreement to allow sound attenuation beneath the floors of the condominiums above Station # 2. Plaintiff does not refer to or attach any written document memorializing such an agreement.

In order to be enforceable, a contract "must be sufficiently definite to enable a court to give it an exact meaning." *Smith v. Farrell*, 199 Va. 121, 127-28, 98 S.E.2d 3, 7 (1957). The contract must, also be complete. *See id.* The agreement alleged by Plaintiff lacks one essential element of a contract,

consideration. *See, e.g., Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 346, 269 S.E.2d 838, 844 (1980). The Supreme Court of Virginia, however, has found the existence of consideration sufficient to support a simple contract in instances in which an estopped party "caused the other party to occupy a more disadvantageous position than that which he would have occupied except for that conduct." *Georgeton v. Reynolds*, 161 Va. 164, 173-74, 170 S.E. 741, 744 (1933). This theory is distinct from promissory estoppel, which is not recognized in Virginia. *See W. J. Schafer Assocs. v. Cordant, Inc.*, 254 Va. 514, 520-21, 493 S.E.2d 512, 515-16 (1997).

It is therefore possible that Marathon and Gadams may have entered into a valid oral contract with Station # 2 and that Marathon and Gadams may have violated that contract when it failed to work with Station # 2 with regard to the installation of sound attenuation material.

## 2. *Fraud*

Station # 2 alleges that Marathon and Gadams pulled a "bait and switch" scam on the restaurant by making promises that induced Station # 2 to enter into a lease agreement with Lynch and then refusing to allow the restaurant to install sound attenuation underneath the floor of the above condominiums.

Marathon and Gadams, directing the Court's attention to *Richmond Metropolitan Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998), argue that Plaintiff's fraud claim is merely an attempt to "double dip" by turning a breach of contract claim into a claim for fraud:

> In determining whether a cause of action sounds in contract or tort, the source of the duty violated must be ascertained. In *Oleyar v. Kerr, Trustee*, 217 Va. 88, 90, 225 S.E.2d 398, 399-400 (1976) (quoting *Burks' Pleading and Practice* § 234 at 406 (4th ed. 1952)), we distinguished between actions for tort and contract:
>
> > If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists), then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants

> be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.
>
> We have acknowledged that a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty. *Foreign Mission Bd. v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991). However, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract."

*Id.* (citing *Spence v. Norfolk & W. RR.*, 92 Va. 102, 116, 22 S.E. 815, 818 (1895)).

And again, in *Blair Construction, Inc. v. Weatherford*, 253 Va. 343, 346, 485 S.E.2d 137, 139 (1997) (quoting *Patrick v. Summers*, 235 Va. 452, 454, 369 S.E.2d 162, 164 (1988)), the Supreme Court of Virginia states that "fraud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." The court went on to explain that "[a]n action based upon fraud must aver the misrepresentation of present pre-existing facts, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. Were the general rule otherwise, every breach of contract could be made the basis of an action in tort for fraud." *Id.* at 347, 485 S.E.2d at 139 (quoting *Lloyd v. Smith*, 150 Va. 132, 145, 142 S.E. 363, 365 (1928)).

The common law does not require Gadams, Marathon, or 237 Granby, L.L.C., to allow sound attenuation underneath the floor of their condominium project, and Plaintiff alleges only that Gadams and Marathon changed their minds with regard to the insertion of sound attenuation due to cost (First Am. Compl. ¶ 21), not that they had lied from the beginning about their plan to allow Station # 2 to install sound attenuation. Therefore, Station # 2 has not alleged facts which, if proven, would amount to a claim of fraud against Marathon or Gadams.

### 3. *Interference with Business*

Plaintiff alleges in Count VII of its First Amended Complaint that Lynch tortiously interfered with Station # 2's business expectancy and that Lynch conspired with others to injure its business. Tortious interference with business expectancy is a common law tort, while conspiracy to injure a business is governed by Virginia Code Annotated, §§ 18.2-499 and 18.2-500.

### i. *Tortious Interference with Business Expectancy*

The Supreme Court of Virginia lists the elements of tortious interference with a business relationship in *Glass v. Glass*, 228 Va. 39, 51, 321 S.E.2d 69, 76-77 (1984): "(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that, absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff."

Addressing each element in turn, the Complaint makes allegations of a business relationship sufficient to meet the first element. Paragraph 32 of the First Amended Complaint states that Station # 2 was scheduled as a venue for weddings and that it had "regular crowds" on weekends.

The Complaint does not allege that Marathon or Gadams knew that Station # 2 had weddings scheduled and had "regular crowds" on weekends. It does allege facts, however, that suggest Gadams and Marathon understood that Station # 2 planned from the beginning to draw guests using live performances. (*See* First Am. Compl. ¶¶ 4 & 5.)

With regard to the third element, Plaintiff alleges that Marathon and Gadams took part in barring Station # 2 from installing sound attenuation, which then resulted in a directive from the City of Norfolk prohibiting live music at Station # 2. The third element of tortious interference requires "misconduct," relying on the ability of Station # 2 to prove either its breach of contract or fraud claims against Marathon or Gadams. Plaintiff may be able to do so, as its breach of contract claim has survived Defendants' Demurrer.

With regard to the fourth element, Station # 2 still had an operating restaurant after the City's alleged February 19, 2006, directive, albeit one without live entertainment. The damages, accordingly, would be the difference in business expectancy of a restaurant with live entertainment, and one without live entertainment. Station # 2 was in operation for less than ten days after the City's directive, with one weekend during that time. Arguably, it may be possible for Station # 2 to prove damages despite this short operating period. *See* Va. Code Ann. § 8.01-221.1.

Therefore, with regard to Plaintiff's claim of tortious interference with a business against Marathon and Gadams, it has pleaded facts sufficient to support a cause of action.

ii. *Conspiracy to Injure Business*

Section 18.2-499(A) of the Virginia Code makes it illegal for:

> [a]ny two or more persons who combine, associate, agree, mutually undertake, or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act. . . .

Section 18.2-500(A) awards treble civil damages to a person injured by reason of a violation of § 18.2-499(A).

The Supreme Court of Virginia has clarified what elements are necessary for a plaintiff to succeed in a civil action for violation of § 18.2-499(A): "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business and (2) resulting damage to plaintiff." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449, 318 S.B.2d 592, 596 (1984). The statutes do not require a plaintiff to prove that a defendant acted with actual malice; they require only proof that a defendant acted with legal malice, "intentionally, purposely, and without lawful justification." *Simmons v. Miller*, 261 Va. 561, 578, 544 S.E.2d 666, 677 (2001); *Commercial Bus. Sys. v. BellSouth Servs., Inc.*, 249 Va. 39, 47, 453 S.E.2d 261, 267 (1995). However, to be "without lawful justification," the Supreme Court of Virginia clarifies a civil conspiracy must necessarily include "some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985). Additionally, in order to succeed on a claim of civil conspiracy under §§ 18.2-499 and 18.2-300, a plaintiff must prove with clear and convincing evidence each element of the offense. *Simmons v. Miller*, 261 Va. at 578, 544 S.E.2d at 677.

Station # 2 must prove, then, by clear and convincing evidence, that (1) Marathon and Gadams conspired with someone; (2) the conspiracy involved an intent to injure Plaintiff; (3) they used illegal means or intended to serve an unlawful purpose; and (4) they succeeded in damaging Plaintiff.

Station # 2 alleges that (1) Marathon and Gadams conspired with Lynch and Hourigan (*see* First Am. Compl. ¶¶ 23, 55, 73); (2) with the intent to bar Station # 2 from providing live entertainment, vital to the restaurant's profits

(*see* First Am. Compl. ¶¶ 24, 53, 55); (3) violating an enforceable oral contract in order to achieve its end goal (*see* First Am. Compl. ¶¶ 60-63); (4) and the plan culminated in a directive prohibiting Station # 2 from providing live entertainment, which damaged Station # 2's profits (*see* First Am. Compl. ¶¶ 31, 32).

Accordingly, the Court will overrule Defendants' Demurrer to Count VII of the First Amended Complaint.

## Conclusion

The court denies Defendants Marathon and Frank T. Gadams's Motion Craving Oyer, denies Defendants' Special Plea in Bar, sustains Defendants' Demurrer with regard to Count VI of the First Amended Complaint, and overrules Defendants' Demurrer with regard to Counts V and VII of the Second Amended Complaint.

## Opinion

Defendant Hourigan Construction Corporation submitted a Demurrer to the First Amended Complaint and a Motion to Crave Oyer. This opinion will address the counts presented against Defendant Hourigan.

Plaintiff alleges two causes of action against Hourigan. Count I of the First Amended Complaint alleges that Hourigan damaged Plaintiff's property and that Hourigan is liable for civil trespass. Count VII of the complaint alleges that Hourigan conspired with Lynch and Mr. Gadams to cause the demise of Station # 2. Hourigan now demurs to both counts against it.

## Discussion

## I. *Motion to Crave Oyer*

Hourigan submitted to the Court a Motion to Crave Oyer of the construction contract between Hourigan and 237 Granby, L.L.C., and Station # 2's Certificate of Occupancy. Both documents support Hourigan's position and are mentioned in the First Amended Complaint.

Although Plaintiff may decide to use Hourigan's construction contract as evidence at trial and the contract may be beneficial to Hourigan's position, the contract is not vital to Plaintiff's First Amended Complaint. Hourigan's Motion to Crave Oyer, therefore, will be denied, and the Court will not take the contract into consideration for purposes of considering Hourigan's Demurrer.

## II. *Demurrer*

### A. *Property Damage and Civil Trespass*

The Supreme Court of Virginia has defined a trespass at common law to be "an unauthorized entry onto property which results in interference with the property owner's possessory interest therein." *Cooper v. Horn*, 248 Va, 417, 423, 448 S.E.2d 403, 406 (1994) (citing 5 Richard R. Powell, *The Law of Real Property* 707 (Patrick J. Rohan, ed., 1994)). "Thus," the court added, "in order to maintain a cause of action for trespass to land, the plaintiff must have had possession of the land, either actual or constructive, at the time the trespass was committed." *Id.*

Plaintiff alleges that it had an oral lease agreement with the owner of the first floor of the building beginning in October of 2004. (*See* First Am. Compl. ¶ 12.) Station # 2 and Lynch signed a written lease agreement signed on December 27, 2004. (*See* First Am. Compl. ¶ 14, ex. 1.) Plaintiff alleges, however, that it was unable to take up occupancy in the building until the City of Norfolk issued a Certificate of Occupancy on an unspecified date in mid-February of 2005. (*See* First Am. Compl. ¶ 16.)

The Court must sustain the Demurrer if Plaintiff did not plead facts which, if true, suggest Station # 2 had either actual or constructive possession of the restaurant space at the times it alleges Hourigan trespassed on its property.

The Supreme Court of Virginia has explained the concept of constructive possession:

> The owner of personal property may deliver it to another upon conditions, or in circumstances, which, give the recipient bare custody of the property. Constructive possession remains in the owner. Examples are: a watch handed to a friend to time a race, the owner expecting its return at the end of the race; clothing handed to a customer in a clothing store, to try on for size, the owner expecting it to be returned if rejected, paid for if accepted; groceries loaded into a shopping cart in a supermarket, the owner expecting them to be paid for at a cash register before they are removed from the premises.

*Pritchard v. Commonwealth*, 225 Va. 559, 562, 303 S.E.2d 911, 913 (1983). And actual possession, then, is the "bare custody" of property. See *id.*

Under this definition of constructive possession, Lynch, the owner of the first floor of the building in which Station # 2 was located, retained constructive possession of the property at all times. So Hourigan can only be liable for civil trespass at times when Station # 2 had bare custody of its leased space. By its own allegations, it did not obtain bare custody of the property until sometime in February of 2005.

Plaintiff's allegations of property damage and civil trespass include:

(1) November 19, 2004: Hourigan caused or allowed refuse to drop from the third floor of the building into Station # 2's mezzanine space, causing dust and debris to contaminate the area. Station # 2 repaired the damage by restaining wood steps and bar and cleaning and waxing the floor. (First Am Compl. ¶ 36.)

(2) November 2004 through February 2005: Hourigan caused Station # 2 and its associated sound equipment to be vulnerable to rainfall, requiring employees of Station # 2 to wipe down the sound equipment during heavy rain. (First Am. Compl. ¶ 36.)

(3) Date not specified: Hourigan used the elevator shaft for refuse, causing dust to dirty Station # 2's new kitchen, which employees of Station # 2 were required to clean. (First Am. Compl. ¶ 37.)

(4) Date not specified: Hourigan caused a hole above the office of Station # 2, allowing water to enter the office. (First Am. Compl. ¶ 38.)

(5) Date not specified: Hourigan used hot water from Station # 2's lines. (First Am. Compl. ¶ 39.)

Of this list of allegations, the second, third, fourth, and fifth, do not specify exactly the date of the violations, and therefore could possibly have occurred after November of 2004. Even these allegations, however, are insufficient to state a claim for which relief can be granted because, even if Plaintiff could prove the truth of the allegations at trial, it still would not be entitled to relief because the allegations leave open the possibility that the violations may have occurred before Station # 2 took possession of the restaurant.

## B. *Interference with Business*

Plaintiff alleges in Count VII of its First Amended Complaint that Hourigan tortiously interfered with Station # 2's business expectancy and conspired with others to injure its business by Preventing Station # 2 from installing sound attenuation material underneath the floor of the

condominiums Hourigan constructed. Tortious interference with business expectancy is a common law tort, while conspiracy to injure a business is governed by Virginia Code Annotated, §§ 18.2-499 and 18.2-500.

### 1. *Tortious Interference with Business Expectancy*

The Supreme Court of Virginia lists the elements of tortious interference with a business relationship in *Glass v. Glass*, 228 Va. 39, 51, 321 S.E.2d 69, 76-77 (1984): "(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that, absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff."

Addressing each element in turn, the Complaint makes allegations of a business relationship sufficient to meet the first element. Paragraph 32 of the First Amended Complaint states that Station # 2 was scheduled as a venue for weddings and that it had "regular crowds" on weekends.

The Complaint does not allege that Hourigan knew that Station # 2 had weddings scheduled and had "regular crowds" on weekends, failing in the second element.

The Complaint is also deficient with regard to the third element; Plaintiff alleges that Hourigan took part in barring Station # 2 from installing sound attenuation, which then resulted in a directive from the City of Norfolk prohibiting live music at Station # 2. The third element of tortious interference requires "misconduct," and therefore relies on the ability of Station # 2 to prove its civil trespass claim against Hourigan, which, as explained above, it cannot do.

With regard to the fourth element, Station # 2 still had an operating restaurant after the City's alleged February 19, 2006, directive, albeit one without live entertainment. The damages, accordingly, would be the difference in business expectancy of a restaurant with live entertainment, and one without live entertainment. Station # 2 was in operation for less than ten days after the City's directive, with one weekend during that time. Arguably, it may be possible for Station # 2 to prove damages despite this short operating period. *See* Va. Code Ann. § 8.01-221.1.

Based on the above discussion, the Court must sustain Defendants' Demurrer because, even if Plaintiff proves the allegations in its First Amended Complaint, Hourigan would not be subject to liability for tortious interference with Station # 2's business expectancy.

## 2. *Conspiracy to Injure Business*

Section 18.2-499(A) of the Virginia Code makes it illegal for:

> [a]ny two or more persons who combine, associate, agree, mutually undertake, or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act. . . .

Section 18.2-500(A) awards treble civil damages to a person injured by reason of a violation of 18.2-499(A).

The Supreme Court of Virginia has clarified what elements are necessary for a plaintiff to succeed in a civil action for violation of § 18.2-499(A): "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business and (2) resulting damage to plaintiff." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449, 318 S.E.2d 592, 596 (1984). The statutes do not require a plaintiff to prove that a defendant acted with actual malice; they require only proof that a defendant acted with legal malice, "intentionally, purposely, and without lawful justification." *Simmons v. Miller*, 261 Va. 561, 578, 544 S.E.2d 666, 677 (2001); *Commercial Bus. Sys. v. BellSouth Servs., Inc.*, 249 Va. 39, 47, 453 S.E.2d 261, 267 (1995). However, to be "without lawful justification," the Supreme Court of Virginia clarifies, a civil conspiracy must necessarily include "some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself Criminal or unlawful, by criminal or unlawful means." *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va 396, 402, 337 S.E.2d 744, 748 (1985). Additionally, in order to succeed on a claim of civil conspiracy under §§ 18.2-499 and 18.2-500, a plaintiff must prove with clear and convincing evidence each element of the offense. *Simmons v. Miller*, 261 Va. at 578, 544 S.E.2d at 677.

Station # 2 must prove, then, by clear and convincing evidence, that: (1) Hourigan conspired with someone; (2) the conspiracy involved an intent to injure Plaintiff; (3) it used illegal means or intended to serve an unlawful purpose; and (4) it succeeded in damaging Plaintiff.

Although the City of Norfolk's directive silencing Station # 2 may have damaged Plaintiff, as discussed above, Plaintiff does not make any allegations suggesting that Hourigan used any illegal means to procure this directive.

Based on the foregoing, Defendant's Motion to Crave Oyer is moot.

*Conclusion*

The court denies Defendant Hourigan Construction Company's Motion to Crave Oyer and sustains Defendant's Demurrer with regard to Counts I and VII of the Second Amended Complaint.